City of Chicago, Appellee, v. Robert Dorband, Appellant.

Gen. No. 39,977.

618

Heard in the second division of this court for the first district at the February term, 1938. Opinion filed December 13, 1938.

ARTHUR F. GRUENWALD, of Chicago, for appellant.

BARNET HODES, Corporation Counsel, for appellee; L. LOUIS KARTON, Assistant Corporation Counsel, of counsel.

MR. JUSTICE JOHN J. SULLIVAN delivered the opinion of the court.

By this appeal defendant, Robert Dorband, seeks to reverse a judgment wherein he was found guilty of violating certain ordinances of the city of Chicago and fined $5.

Dorband was a taxicab driver employed by the New Cab Company, which operated its cabs from its place of business in the city of Evanston, Illinois. Louise O'Connell, who lived on Lunt avenue, Chicago, telephoned the office of said cab company requesting that a taxicab be sent to her home. When the taxicab arrived, upon entering same with her mother, she directed the driver thereof to take them to 30 North Michigan avenue, Chicago, wait for them and then drive them back to their home. She had used taxicabs of this company for similar trips on previous occasions but had not theretofore been driven by Dorband. When not engaged, the cab defendant drove was stationed at the New Cab Company's cab station on the Evanston side of Howard avenue. Prior to being dispatched to drive Miss O'Connell and her mother, defendant had made several other trips on the same day in response to telephone calls from Chicago for taxicab service. It was stipulated that defendant had no license to operate a taxicab in the city of Chicago, that the taxicab which he drove did not have a Chicago license, that the owner of same did not have a certificate of inspection of its taximeter and that said taximeter registered a rate which was not in accordance with the Chicago ordinances. While defendant was waiting for his passen-

gers at 30 North Michigan avenue, Chicago, to drive them home, he was arrested and charged with violation of secs. 2078, 2103 and 2107 of the Chicago Municipal Ordinances, which provide:

"2078. *Licensing of public passenger vehicles.*) No motor vehicle other than a licensed public passenger vehicle shall be operated along or upon the streets and public ways of the city for the carriage of passengers for hire indiscriminately accepting and discharging such persons as may offer themselves for transportation.

"Applications for public passenger vehicle licenses shall be made by the owner upon blanks furnished by the commissioner and such application shall contain the full name and address of the owner, the class of vehicle for which a license is desired, the length of time the vehicle has been in use, the number of persons it is capable of carrying and the horsepower thereof. No public passenger vehicle shall be licensed until it has been thoroughly and carefully inspected under the direction of the commissioner and examined and found to be in safe condition for the transportation of passengers, clean, of good appearance and well painted and varnished, and no taxicab shall be licensed until a certificate of inspection of its taximeter shall have been issued.

"When any public passenger vehicle is licensed in accordance with the provisions hereof a card of such size and form as may be prescribed by the commissioner shall be delivered to the owner in addition to the license. Said card shall contain the public passenger vehicle license number of the vehicle, together with the date of inspection of same and a statement to the effect that in case of any complaint the commissioner shall be notified and the license number of the vehicle shall be reported. Such card shall be signed by the commissioner and shall contain blank spaces upon which an entry shall be made of the date of every inspection of the

vehicle. Such license card shall be of a distinctly different color each year and shall contain the name of the person, firm or corporation owning such vehicle, and for taxicabs, the serial license number assigned hereunder shall in each case be the same as that assigned to the vehicle for the previous year.

"Every taxicab, licensed under the provisions of this article, shall have the name of the owner thereof and the public passenger vehicle license number plainly painted in letters at least two inches in height in the center of the main panel of the rear door of said vehicle.

"2103. *Testing of taximeters.*) It shall be the duty of every person, firm or corporation owning, controlling or operating any taxicab, to deliver either the taxicab together with the taximeter, or the taximeter detached therefrom, to the *commissioner* upon demand for test; provided, however, any such person, firm or corporation may be present or represented at the time such test is made. Every taximeter shall be tested to determine the accuracy of its recording mechanism with respect to distance traveled either by running the taxicab to which it is attached over a course a standard mile in length or by a mechanical test. Both of the foregong tests may be made in the discretion of the *commissioner*.

"In order to determine whether any taximeter correctly registers waiting time, it shall be the duty of the *commissioner* to test such taximeter by comparing the time recorded as shown by the fare computed on the dial thereof with the standard time.

"When any test shows that a taximeter correctly records the charge or fare, measured by distance traveled, waiting time and extra passengers, it shall be sealed and a written certificate of the test shall be issued to the writer.

"2107. *Rates of fare for taxicabs.*) Any person, firm or corporation owning, controlling or operating any taxicab may charge, demand, collect or receive the

following rates of compensation for the service of said taxicab:

"For the first one-third of a mile or fraction thereof for one person.............................15 cents

"For each additional two-thirds of a mile or fraction thereof for one person......................10 cents

"For each additional person of the age of twelve years or more for the whole trip..............5 cents

"For each three minutes of waiting time or fraction thereof ...................................10 cents

"Such waiting time shall include the time beginning ten minutes after call time at the place to which the taxicab has been called, when it is not in motion, the time consumed by unavoidable delays at street intersections, bridges or elsewhere and the time consumed while standing at the direction of a passenger.

"Every passenger under twelve years of age when accompanied by an adult shall be carried without charge.

"No taxicab shall carry more than five passengers of the age of 12 years or more at the same time.

"Passengers shall be entitled to the conveyance of their ordinary hand baggage without charge. A fee of twenty-five cents may be charged for carrying a trunk, but no trunk shall be carried except inside of the taxicab.

"It shall be unlawful for any person, firm or corporation owning, controlling or operating any taxicab to charge, demand, collect or receive greater or less or different rates of compensation for taxicab service than those established or fixed by the foregoing schedule."

In our opinion the primary purpose intended to be served by the foregoing sections of the Municipal Code of Chicago, in so far as they are applicable to taxicabs, was to prohibit the use of the streets and public ways of the city of Chicago as a place of business by any

motor vehicle used as a taxicab for the carriage of passengers for hire, whether Chicago owned or owned elsewhere, unless such taxicab had its meter tested and sealed and was licensed in accordance with the provisions of said sections of the ordinances. The language contained in sec. 2078 "for the carriage of passengers for hire indiscriminately accepting and discharging such persons as may offer themselves for transportation" is not susceptible of the narrow construction that it was intended to apply only to taxicabs which pick up passengers who are on the streets or sidewalks of Chicago and offer themselves as passengers. We think that the language quoted, while somewhat inaptly phrased, reasonably construed, evidences an intention to include within its purview the indiscriminate acceptance of passengers for hire by taxicabs, whether such passengers request taxicab service over the telephone or by hailing a taxicab from a street or sidewalk or in any other manner.

The difficulty with the city's position in its endeavor to sustain defendant's conviction is not so much a matter of having a proper construction placed upon the ordinances before us but rather that the sections of the ordinances under which it prosecuted defendant are not applicable to drivers of taxicabs who are not also the owners thereof. Even a casual examination of the language contained in section 2078 clearly indicates that it was drawn to apply only to the owners of public passenger vehicles, including taxicabs. It requires the owner and not the chauffeur to apply for the license for the vehicle and it must be borne in mind that the license provided for in this section is for the vehicle and not for the driver of same. It is readily apparent that a driver of a taxicab, unless he is also the owner thereof, has no such control over such vehicle that he has it within his power to comply with the terms and conditions of this section of the ordinances of the city of

Chicago. It is difficult to perceive how a driver of a taxicab can be successfully prosecuted for violating an ordinance, the terms and conditions of which it was never contemplated that he would or could comply with.

What has been said as to section 2078 is equally applicable to section 2103, which has to do with the testing of taximeters, the sealing of said meters and the written certification to the owners of taxicabs that the meters thereon ''correctly record the charge and fare.'' This section is merely supplemental to section 2078 inasmuch as that section provides that ''no taxicabs shall be licensed until a certificate of inspection of its taximeter shall have issued.'' Section 2103 is unquestionably directed solely against the owners of taxicabs since the drivers of same have no such control over the taxicabs or their taximeters as would render it possible for them to comply with its provisions and it being impossible for the driver of a taxicab to comply with the terms of this section and it never having been intended that he should, it can hardly be held that he is guilty of failing to comply with them.

Section 2107 sets forth the rates of compensation that may be charged for taxicab service, for waiting time and for carriage of extra passengers and provides that ''it shall be unlawful for any person, firm or corporation owning, controlling or operating any taxicab to charge, demand, collect or receive greater or less or different rates of compensation for taxicab service than those established or fixed by the foregoing schedule.'' In our opinion this section is also directed solely against the owners of taxicabs and the words ''controlling'' and ''operating'' are used therein synonymously with the word ''owning,'' since the fare charged, collected or received is determined by the taximeter, over which it has been heretofore shown the driver has no control. This section was undoubtedly levelled at the

owners of taxicabs so that the responsibility would be squarely placed upon them of maintaining the taximeters on same in condition to record the proper "charge and fare." But in any event the defendant in the instant case could not be found guilty of violating this section because there is no evidence in the record that he demanded, collected or received "an unlawful rate of compensation" for the taxicab service rendered by him and he could not be found guilty of charging an unlawful rate inasmuch as it was not he but the taximeter on his taxicab that recorded and fixed the charge. In fact, as heretofore shown, he was arrested before he collected any fare. We are impelled to hold that the sections of the ordinances of the city of Chicago under consideration, as presently drawn, are inapplicable to defendant as the driver of a taxicab, and that his conviction for the violation thereof cannot be sustained.

What we have already said disposes of the question of the defendant's guilt. However, we are asked to clarify the matters involved in what has been termed the "indirect issue." Under this issue it is claimed (1) that "licenses are required only for soliciting indiscriminately on the streets of Chicago, not elsewhere," (2) that "the City of Chicago has no power to require a taximeter test and a Chicago taxicab license of the owner of a taxicab whose place of business is in the City of Evanston and who makes a contract there for taxicab service to be rendered in the City of Chicago," and (3) that "the enforcement of the ordinances in issue, to facts as found here, is directly forbidden by the statutes of Illinois."

The first claim has been sufficiently answered by our discussion heretofore of the language referred to in section 2078 and our construction of same.

The second claim questions the power of the city of Chicago to require by ordinance a taximeter test or a

taxicab license of the owner of a taxicab whose place of business is in the city of Evanston and who makes a contract there for taxicab service to be rendered in the city of Chicago. The purported contract is predicated upon the dispatch of a taxicab by its owner in response to a request by telephone for same received at said owner's place of business in Evanston from some person in Chicago. It is sufficient answer to this claim that the question of whether a Chicago telephone call for taxicab service having been received in the city of Evanston and a taxicab having been dispatched in response thereto by its Evanston owner to render service in the city of Chicago, constitutes a contract made in Evanston, is immaterial and of no importance. Such a contract, even if valid and binding between the parties, could not render nugatory valid ordinances of the city of Chicago or frustrate their enforcement. Municipal ordinances are binding on all persons within the territorial jurisdiction of the city in and for which they are enacted and since, as has been shown, the foregoing ordinances are in effect in the city of Chicago regulating and licensing taxicabs, owners of such subject themselves to the provisions of said ordinances if they use their taxicabs for the transportation of passengers for hire within the limits of said city. It goes without saying that a contract of the nature indicated is invalid in its inception since its very purpose is illegal in that it contemplates the violation of valid ordinances of the city of Chicago.

The third claim advanced is that the enforcement by the city of Chicago of the sections of the ordinances in question against the owner of a taxicab who has procured his State automobile license and paid such license or tax as is required by the city of Evanston, is directly prohibited by the following sections of the statutes:

"No owner of a motor vehicle or motor bicycle who shall have obtained a certificate from the Secretary of

State and paid the registration fee as hereinbefore provided, shall be required by any city, village, town or other municipal corporation within the State other than that within which said owner resides to pay any tax or license fee for the use of such motor vehicle . . .

"Nor shall such owner be required to display upon his motor vehicle or motor bicycle any other plate or tax or license number than that issued by the Secretary of State or by the city, village, town or other municipal corporation within the State wherein which said owner resides . . ." Ill. Rev. Stat. 1937, ch. 95½, secs. 32 and 32a [Jones Ill. Stats. Ann. 85.032].

". . . And no firm or corporation shall be required to pay any such vehicle license tax in any municipality in this State except the one in which said firm or corporation maintains and conducts its principal place of business in this State." Ill. Rev. Stat. 1937, ch. 24, sec. 671 [Jones Ill. Stats. Ann. 21.800].

The prohibitions contained in the foregoing sections of the statutes clearly apply only to the unrestricted use of the public streets and highways throughout the State by any vehicle, the owner of which has secured the license required by the State and paid such tax as may be imposed by the city, village, town or other municipal corporation wherein said owner resides or in the case of a firm or corporation where it maintains and conducts its principal place of business. These statutes are not in conflict with section 42 of article V, of the Cities and Villages Act, which specifically authorizes municipalities to license, tax and regulate cabmen and others pursuing a like occupation for their use of the streets of a city as a place of business for private gain. The city of Chicago has the right to enact ordinances restricting the use of its streets as a place of business by taxicab owners and drivers unless they are properly licensed. Section 42, art. V of the Cities and

Villages Act (ch. 24, par. 65.41, Ill. Rev. Stat. 1937 [Jones Ill. Stats. Ann. 21.106]) provides:

"The city council . . . shall have power . . .

"To license, tax and regulate hackmen, draymen, omnibus drivers, carters, cabmen, porters, expressmen and all others pursuing like occupations and to prescribe their compensation."

In *People v. Thompson,* 341 Ill. 166, the court held at pp. 168, 169:

"The Public Utilities act does not take from cities and villages the previously conferred power to regulate taxicabs. The taxicab business, as a general rule, does not include the operation of a conveyance or vehicle over specified routes, under a regular schedule as to time or between definite points, and hence, within the meaning of the Public Utilities act, a taxicab is not ordinarily a public utility. (*Newcomb v. Yellow Cab Co.* P. U. R. 1916-B, 983; *Southern Illinois Light and Power Co. v. Norton,* id. 987; *Austin Bros. Transfer Co. v. Bloom,* 316 Ill. 435.) The right to regulate includes the right to impose reasonable conditions and restrictions. (*Westgate v. Adrian Township,* 162 N. W. (Mich.) 422; *McWethy v. Aurora Electric Light and Power Co.* 202 Ill. 218.) The power to regulate the use of streets by vehicles includes the power to promote the general welfare and prevent accidents, and the reasonableness of police regulation is not necessarily what is best but what is fairly appropriate under all circumstances. (*Weksler v. Collins,* 317 Ill. 132; *Sligh v. Kirkwood,* 237 U. S. 52.) An ordinance will be presumed reasonable until the contrary is proved. (*City of Chicago v. Washingtonian Home,* 289 Ill. 206; *People v. Village of Oak Park,* 266 id. 365.)"

It is not contended by the city of Chicago that a taxicab, whose owner's principal place of business is in Evanston, may not lawfully be driven over and through the streets of Chicago with passengers whose trip com-

menced in the city of Evanston or that such passengers may not be returned in said taxicab over the streets of Chicago to Evanston, but it is seriously urged that when the taxicab service is rendered wholly within the limits of Chicago or initiated therein, nonresident owners of such taxicabs may be required to pay the same license fee imposed on owners of taxicabs whose principal place of business is in the city of Chicago. We think this contention is sound.

While sections of the city ordinances under which the defendant driver of the taxicab in the instant case was prosecuted are inadequate for that purpose, they furnish an adequate and sufficient basis for the prosecution of owners of taxicabs who violate them. Just so long as only the drivers of unlicensed out-of-town taxicabs are prosecuted for failing to comply with the aforesaid sections of the ordinances, nonresident owners are afforded an effective shield to ply their trade with impunity upon the streets of Chicago. To cure the situation in so far as the drivers of out-of-town taxicabs, unlicensed by the city of Chicago, are concerned, valid ordinances may be drafted and enacted in precise and appropriate terms restricting the use of the streets of Chicago as a place of business to taxicab chauffeurs who are properly licensed, as well as to taxicabs which are likewise properly licensed.

Our attention is directed to the recent case of *City of Chicago v. Kay*, 282 Ill. App. 604, which it is urged sustains the first two contentions under the so-called "indirect issue." That case also involved an Evanston taxicab not properly licensed to operate on the streets of Chicago. A telephone call for a cab was made, as in this case, to the place of business in Evanston of the owner of the taxicab and the defendant therein was dispatched to pick up the passenger at her home on the far north side of Chicago and transport her to an address in Evanston. After picking up his passenger,

the driver was arrested while still within the limits of the city of Chicago and charged with violating section 2078 of the Municipal Code of Chicago, heretofore set forth. The driver was found guilty and fined $5. We are in accord with the conclusion reached in the *Kay* case, where the conviction of the driver of the taxicab was reversed, but only in so far as said conclusion is based upon the inapplicability of the ordinance for the violation of which the defendant driver in that case was prosecuted and convicted. We are unable to agree with the reasoning of the court in other respects in support of its decision.

For the reasons hereinbefore stated, the judgment of the municipal court of Chicago is reversed.

*Judgment reversed.*

FRIEND, P. J., and BURKE, J., concur.