Argued November 22, 1949.
Defendant was convicted before a magistrate of violating the Public Utility Law by operating a motor vehicle as a common carrier without a certificate of public convenience. He was fined $25 and costs. On appeal to the court below the case was tried de novo without a jury. Defendant offered no testimony, his demurrer *Page 65 
to the evidence was overruled, and his motion for a directed verdict was denied. He was convicted, and this appeal followed. The sole question for us is whether the Commonwealth showed by sufficient competent evidence that defendant was guilty of the offense charged.
The Commonwealth's evidence is not disputed. Defendant was the owner of a Dodge sedan; he had not been granted a certificate of public convenience by the Pennsylvania Public Utility Commission; on April 19, 1949 at 1:21 a. m. two investigators for the United Cab Association hailed defendant's car, equipped with a dome light bearing the word "Taxi", at Broad and Market Streets in central Philadelphia and were driven to their destination some twenty blocks away. At the destination one investigator asked the price, and testified that the driver replied: "fifty cents or whatever I wanted to give"; whereupon the investigator paid the driver fifty cents. The investigators could not identify defendant as the driver of the car but it is admitted that defendant is the registered owner.
Defendant argues that the conviction cannot be sustained for three reasons: 1. Mere ownership of the vehicle without proof of owner's knowledge of its illegal use or participation in the alleged offense is insufficient. 2. The car was not a "common carrier by motor vehicle" within the meaning of the Act since it was not transporting passengers for "compensation." 3. It was not shown that defendant received any money from anyone.
I. The Public Utility Law of May 28, 1937, P. L. 1053, § 1311, 66 P. S. § 1501, as amended, provides inter alia: "Any person or corporation operating as a motor carrier . . . and any operator or employe of such carrier, and any person . . . operating as a broker, without a certificate of public convenience, . . . authorizing the service performed, as required by this act, shall, upon conviction of a first or second offense in a summary proceeding . . . be sentenced to pay the costs of prosecution *Page 66 
and a fine of not less than twenty five dollars nor more than three hundred dollars; . . ." Under this Act liability is imposed upon three classes of persons: the person "operating as a motor carrier" (e. g., an owner of a car or the proprietor of a business as distinguished from the person physically driving the car); the driver or "employe of such carrier"; and the broker. Ownership alone does not create liability, but where an owner permits his car, equipped with a taxi light dome, to be held out to the public for the purpose of transportation and used for that purpose it is a reasonable inference that he has knowledge and control of it, especially in the absence of evidence to the contrary. The offense is purely statutory and the common law rule that one is not liable for the criminal acts of another in which he did not participate does not apply. "`Whether a criminal intent, or a guilty knowledge, is a necessary ingredient of a statutory offense, is a matter of construction,' to be determined `from the language of the statute, and in view of the manifest purpose and design of the same'": Com. v. Jackson, 146 Pa. Super. 328, 331,22 A.2d 299, affirmed 345 Pa. 456, 28 A.2d 894.[1] *Page 67 
The decisions of this Court in Smith v. P. S.C., 73 Pa. Super. 209, and Ramsey and Johnson v. P. S.C., 73 Pa. Super. 215, upon which defendant relies do not govern this case. Those cases arose under The Public Service Company Law of July 26, 1913, P. L. 1374, which did not contain a provision similar to that now under discussion. They involved violations of Article III, section 2(b), and were actions to restrain defendants from operating autobusses as common carriers without certificates of public convenience. In neither instance was the evidence sufficient to establish that defendants, who were the registered owners, were personally holding themselves out as common carriers nor (in the case of Johnson) was the servant acting under the defendant's authority. The 1913 Act did not impose liability upon thoseoperating as a motor carrier. The Act of 1913 was repealed by the Act of May 28, 1937, P. L. 1053, supra. Now the offense of carrying passengers for hire in a motor vehicle without first acquiring the prerequisite certificate extends to the person or corporation "operating as a motor carrier" as well as the driver.[2]
Judge GUERIN of the court below aptly stated: "An enterprise is `operated' by the mere furnishing of the merchandise, the equipment, the capital, or the skill required for its conduct. Personal participation by the `operator' in the physical functioning not only is unnecessary, but it is frequently lacking . . ."
Defendant saw fit not to offer any defense or explanation and it is reasonable to conclude in the circumstances *Page 68 
that he was aware of the use of his car and was operating it as a motor carrier in violation of the Act.
II. Defendant's second contention that his car was not a common carrier since it was not transporting passengers for compensation is answered by the definition contained in the Act. "`Common Carrier by Motor Vehicle' means any common carrier who or which holds out or undertakes the transportation of passengers or property, or both, or any class of passengers or property, between points within this Commonwealth by motor vehicle for compensation, whether or not the owner or operator of such motor vehicle, or who or which provides or furnishes any motor vehicle, with or without driver, for transportation or for use in transportation of persons or property as aforesaid . . .": Act of May 28, 1937, supra, § 1(6), 66 P. S. § 1102.
Whether a particular individual is a common carrier is a question of fact to be determined from the evidence. Pa. P. U.C. v. Gornish, 134 Pa. Super. 565, 4 A.2d 569. There was clear and uncontradicted testimony of an indiscriminate holding out to the general public. That the passenger was under no legal obligation to pay and no fixed charge was demanded is irrelevant. Such an arrangement is only an artifice or subterfuge. "Mere schemes or devices to avoid the duties and responsibilities of a common carrier are impotent for the purpose intended when the true character of such acts is established": James v. P. S.C., 116 Pa. Super. 577, 584,177 A. 343. See also Pa. P. U. C. v. Gornish, supra; Dairymen'sCo-Op. Sales Assn. v. P. S.C., 115 Pa. Super. 100,174 A. 826, affirmed 318 Pa. 381, 177 A. 770.
The question of whether such service is for compensation was distinctly answered in Pa. P. U. C. v. Israel, 356 Pa. 400,410, 52 A.2d 317. There the defendants were enjoined from operating motor vehicles bearing the word "taxicab" or "from holding out, offering, or *Page 69 
undertaking, directly or indirectly, service for compensation, whether in the nature of tips, gratuities or otherwise to the public for the transportation of passengers."
III. The fact that the Commonwealth did not prove defendant personally received money for the service is not important. Money was paid to the driver for the service rendered in a car owned and provided by defendant.
Judgment and sentence affirmed.
[1] In other statutory offenses defendant's knowledge has been held not to be a necessary constituent. For example where defendant is charged with the statutory offense of possessing and transporting liquor he need not be conscious that the package is in his possession although his lack of knowledge may be an affirmative defense. Com. v. Schambers, 105 Pa. Super. 467,161 A. 624. Also where defendant is charged with adulterating liquor the Commonwealth is not required to prove defendant participated in the violation or expressly directed its commission by others. Mere possession is prima facie evidence of his knowledge of the offense and will impose liability unless rebutted. Com. v. Speer, 157 Pa. Super. 197,42 A.2d 94. Where the action is in rem to forfeit an automobile used in the illegal transportation of liquor the fact that the unlawful use was without the owner's consent or knowledge is immaterial. Com. v. One 1940 Chevrolet StationWagon, 159 Pa. Super. 615, 49 A.2d 531.
[2] To operate means to put into or to continue in operation or activity; to manage; to conduct; to carry out or through. Webster's International Dictionary. "Operating" is synonymous with owning, controlling or maintaining. Roberts v. City of LosAngeles, 7 Cal.2d 477, 61 P.2d 323; City of Bridgeton v.Zellers, 100 N. J. L. 33, 124 A. 520; City of Chicago v.Dorband, 297 Ill. App. 617, 18 N.E.2d 107.