139     247|
32 SC ¹234|

# COMMONWEALTH v. MATTHIAS WEISS.

## APPEAL BY DEFENDANT FROM THE COURT OF COMMON PLEAS NO. 1 OF ALLEGHENY COUNTY.

Argued November 5, 1890—Decided January 5, 1891.
[To be reported.]

1. .Guilty knowledge, or guilty intent, is, in general, an essential element in crimes at common law; but, whether a criminal intent, or a guilty knowledge, is a necessary ingredient of a statutory offence is a matter of construction, to be determined from the language of the statute, in view of its manifest purpose and design.
2. One who sells "oleomargarine," in ignorance of its real nature, is nevertheless liable for the penalty imposed by § 3, act of May 21, 1885, P. L. 22, which contains nothing to imply that the forbidden act must have been done knowingly or wilfully: to construe the act as so implying would defeat its manifest intent.*

Before PAXSON, C. J., STERRETT, GREEN, CLARK, WILLIAMS, McCOLLUM and MITCHELL, JJ.

No. 68 October Term 1890, Sup. Ct.; court below, No. 106 June Term 1889, C. P. No. 1.

On March 19, 1889, Matthias Weiss entered in the court below an appeal from the judgment of an alderman, in an action brought against him by the commonwealth of Pennsylvania, for use of the county of Allegheny and A. L. Best, to recover the penalty of $100 imposed by § 3, act of May 21, 1885, P. L. 22, upon every person, etc., " who shall manufacture, sell, or offer or expose for sale, or have in his . . . . . possession with intent to sell " oleomargarine, etc.   Issue.

At the trial, on February 28, 1890, the testimony for the plaintiff tended to prove that on February 4, 1889, George Spence ordered and ate a meal at a restaurant kept by the defendant, paying therefor fifty cents; that he was served, as a part of said meal, with a substance resembling butter, which he retained and carried away with him, and that, upon an analysis thereof, the " substance " proved to be oleomargarine, with evi-

---

* See Commonwealth v. Miller, 131 Pa. 118.

dence of cotton seed oil. One of the witnesses for the plaintiff testified that one day, prior to February 4, 1889, he saw a waiter in the employ of the defendant throw out of the doorway of the restaurant an empty oleomargarine package.

The defendant's case consisted of the admission that the defendant, if in court, would testify that he did not knowingly furnish, or authorize to be furnished, to any of his customers any oleomargarine, but, so far as he knew, furnished genuine butter ; this fact to be regarded, for the purposes of this case, as having been testified to by him before the jury.

The testimony being closed the court, COLLIER, J., charged the jury as follows :

The defendant requests the court to instruct the jury :

1. That if they believe from the evidence that the defendant did not knowingly furnish, or authorize to be furnished, or know of being furnished, to any of his customers, any oleomargarine, but, so far as he knew, furnished genuine butter, then the verdict must be for the defendant.

Answer : Refused.[1]

No matter what we may think of this question, as individuals, the Supreme Court of our state and the Supreme Court of the United States have decided this oleomargarine law to be constitutional. Our Supreme Court has decided that the man who sells it in his business, whether he knows it or not, is liable. It does not make any difference ; he must look out and must not sell it as butter ; must not use it as butter. If you choose to buy oleomargarine as lard, that is another question. There is nothing in the evidence in this case, under the law of our land, under the late decision of our Supreme Court, that will prevent the plaintiff from recovering. We therefore direct you to find a verdict for the plaintiff for the amount claimed.

—The jury accordingly returned a verdict for the plaintiff for $100. Judgment having been entered, the defendant took this appeal, specifying that the court erred : ·

1. In refusing the defendant's point.[1]

2. "In directing the jury to find a verdict for the plaintiff for the amount claimed."

*Mr. John S. Ferguson*, for the appellant :

While the word "knowingly" is not used in § 3 of the act upon which this suit is brought, the title of the act shows beyond doubt that the court was in error in holding that it made no difference whether the defendant knew he was furnishing oleomargarine or not. The title reads: "An Act for the protection of the public health, and to prevent adulteration of dairy products and fraud in the sale thereof." Manifestly, it did not intend to punish a person so defrauded, unless, being aware of the fraudulent character of the article imposed upon him, he sells it to some one else. The fraud referred to is actual, not constructive fraud. This is a penal statute, and the construction should be equitable: Commonwealth v. Shopp, 1 Woodw. 123; Irish v. Elliott, Add. 238. The doctrine that when a statute plainly forbids an act to be done, the law conclusively implies a guilty intent, although the offender may have been honestly mistaken as to the meaning of the law, has no application to this case. Commonwealth v. Miller, 131 Pa. 118, does not rule our case, though supposed to do so by the court below.

*Mr. William Yost,* for the appellee :

The testimony which the defendant would have given was too vague and general. He did not propose to show any care to avoid violating the law, or to explain that the open violation of it, shown by the testimony for the plaintiff, could have occurred without his knowledge or authority. But the act of May 21, 1885, P. L. 22, does not require, as an ingredient of the offence, that the sale must be with knowledge or wilful, and want of guilty knowledge or intent is no defence: Wharton Cr. Ev., 725; 3 Greenl. Ev., § 21; Carlson's License, 127 Pa. 330; Commonwealth v. Goodman, 97 Mass. 117; Commonwealth v. Farren, 9 Allen 489; Halsted v. State, 41 N. J. L. 552 (32 Am. Rep. 247); Morris v. People, 3 Denio 403; Commonwealth v. Raymond, 97 Mass. 569; Farrell v. State, 32 Ohio St. 456 (30 Am. Rep. 617). The act of 1885 is in the nature of a police regulation: Powell v. Commonwealth, 114 Pa. 265; s. c. 127 U. S. 678.

OPINION, MR. JUSTICE CLARK:

This was an action brought to recover the penalty of $100,

provided for in the third section of the act of May 21, 1885, P. L. 22, commonly known as the Oleomargarine Act. At the trial, the defendant submitted a point requesting the court to instruct the jury "that, if they (the jury) believe, from the evidence, that the defendant did not knowingly furnish, or authorize to be furnished, or know of being furnished, to any of his customers, any oleomargarine, but, so far as he knew, furnished genuine butter, then the verdict must be for the defendant." The point was refused, and whether the court was right in refusing it, as we understand the case, is the only question upon which a decision is desired. The argument contained in the paper-book, as well as the oral argument in this court, was directed to this question only, and we assume that the parties intended to raise no other. That portion of the charge in which binding instructions were given to find for the plaintiff, is not quoted in totidem verbis, in the assignments of error, according to our rules; it would seem, therefore, that the appellant's intention is to confine our deliberations to the single question referred to.

The first and third sections of the act of 1885 provide as follows :

"1. That no person, firm, or corporate body shall manufacture, out of any oleaginous substance or any compound of the same, other than that produced from unadulterated milk or of cream from the same, any article designed to take the place of butter or cheese produced from pure unadulterated milk, or cream from the same, or of any imitation or adulterated butter or cheese, nor shall sell, or offer for sale, or have in his, her, or their possession with intent to sell the same as an article of food."

"3. Every person, company, firm, or corporate body who shall manufacture, sell, or offer or expose for sale, or have in his, her, or their possession with intent to sell, any substance, the manufacture and sale of which is prohibited by the first section of this act, shall, for every such offence, forfeit and pay the sum of one hundred dollars, which shall be recoverable, with costs, by any person suing in the name of the commonwealth, as debts of like amount are by law recoverable," etc.

Guilty knowledge or guilty intent is, in general, an essential element in crimes at the common law, but statutes providing police regulations, in many cases make certain acts penal, where this element is wholly disregarded. The distinction is

thus laid down in 3 Greenl. Ev., § 21 : " The rule " (i. e., that ignorance of fact will excuse) " would seem to hold good in all cases where the act, if done knowingly, would be malum in se. But, where a statute commands that an act be done or omitted, which, in the absence of such statute, might have been done or omitted without culpability, ignorance of the fact or state of things contemplated by the statute, it seems, will not excuse its violation. Thus, for example, where the law enacts the forfeiture of a ship having smuggled goods on board, and such goods are secreted on board by some of the crew, the owners and officers being alike innocently ignorant of the fact, yet the forfeiture is incurred notwithstanding their ignorance. Such is also the case in regard to many other fiscal, police, and other laws and regulations, for the mere violation of which, irrespective of the motives or knowledge of the party, certain penalties are enacted ; for the law in these cases seems to bind the parties to know the facts, and to obey the law at their peril." To the same effect, also, is Wharton, Crim. Law, §§ 83, 2442.

Whether a criminal intent, or a guilty knowledge, is a necessary ingredient of a statutory offence, therefore, is a matter of construction. It is for the legislature to determine whether the public injury, threatened in any particular matter, is such and so great as to justify an absolute and indiscriminate prohibition. Even if, in the honest prosecution of any particular trade or business, conducted for the manufacture of articles of food, the product is healthful and nutritious, yet, if the opportunities for fraud and adulteration are such as threaten the public health, it is undoubtedly in the power of the legislature, either to punish those who knowingly traffic in the fraudulent article, or, by a sweeping provision to that effect, to prohibit the manufacture and sale altogether. The question for us to decide, therefore, is whether or not, from the language of the statute, and in view of the manifest purpose and design of the same, the legislature intended that the legality or illegality of the sale should depend upon the ignorance or knowledge of the party charged.

The statute in question was an exercise of the police power, and the act was sustained upon this ground, not only in this court, but also in the Supreme Court of the United States:

Powell v. Commonwealth, 114 Pa. 265; Powell v. Pennsylvania, 127 U. S. 678. The prohibition is absolute and general; it could not be expressed in terms more explicit and comprehensive. The statutory definition of the offence embraces no word implying that the forbidden act shall be done knowingly or wilfully, and, if it did, the design and purpose of the act would be practically defeated. The intention of the legislature is plain, that persons engaged in the traffic shall engage in it at their peril, and that they cannot set up their ignorance of the nature and qualities of the commodities they sell, as a defence.

In Massachusetts, a statute declared that if any person should "sell, keep, or offer for sale, adulterated milk," he should be punished, etc.; and it was held that the penalty was incurred, although the sale was made without any knowledge of the adulteration, as when the seller had bought the milk for pure milk: Commonwealth v. Farren, 9 Allen 489; Commonwealth v. Nichols, 10 Allen 199. Upon the same ground, it has been held and it is familiar law, that the statutes against selling intoxicating liquors are violated, although the vendor does not know that it is intoxicating: Commonwealth v. Boynton, 2 Allen 160; Commonwealth v. Goodman, 97 Mass. 117; Commonwealth v. Hallett, 103 Mass. 452. Where a statute imposed a penalty upon "any person who shall sell, or keep for sale, naptha, under any assumed name," a party charged with the offence was held to be guilty, although he was not aware that the article sold was naptha, but believed it to be some other oil: Commonwealth v. Wentworth, 118 Mass. 441. So, where a party is charged with furnishing liquors to minors, or for permitting a minor to play billiards in his saloon, he is not permitted to set up his ignorance of the minor's age to defeat the charge: Wharton, Crim. Law, § 2442, and cases there cited. In our own case, In re Carlson's License, 127 Pa. 330, Carlson, in a proceeding to revoke his liquor license, under the act of May 13, 1887, P. L. 113, was charged with furnishing liquors to minors, in violation of the seventeenth section of the same act. He admitted the sale of liquors to the minors in question. His excuse was that their appearance indicated that they were of full age, and that, as a precaution before selling, he asked their age, and each responded that he was of full age; that he

Syllabus.

sold to them in good faith, fully believing them to be so. Under the act of 1854, a necessary element to constitute the offence was that the sale should be wilful, but in the act of 1887 the word "wilfully" was omitted, and it was enacted "that it shall not be lawful for any person, with or without 'license, to furnish by sale, gift, or otherwise," "any spirituous, vinous, malt, or brewed liquors," "at any time, to a minor." His license having been revoked, the case was brought here for review, and the proceedings were. affirmed. Chief Justice Paxson, delivering the opinion of the court, said: "If we look into the opinion of the court for the facts, we find nothing to help the plaintiffs. From it we learn that the offence of which the plaintiffs in error were guilty was that of selling liquors to minors, and that the only excuse offered was that they did not know the persons to whom they sold were minors. This ignorance is not a sufficient excuse or justification under the act of assembly. If such a defence could be successfully interposed in such cases, there would be few convictions, and the law would be nullified for all practical purposes." To the same effect are Commonwealth v. Sellers, 130 Pa. 32; Commonwealth v. Holstine, 132 Pa. 357, and Commonwealth v. Zelt, 138 Pa. 615. We are of opinion that judgment was rightly entered for the plaintiff, and the judgment is

Affirmed.

Argued November 5, 1890—Decided January 5, 1891.