Opinion by
 

 Hist, J.,
 

 Defendant, a milk dealer in Allegheny County, was charged with a violation of section 807 of .the Milk Control Law, the Act of April 28, 1937, P. L. 417, 31 PS 700j.
 
 [1]
 
 Prom the transcript of the alderman it appears that, at the hearing in a summary proceeding, an investigator for the Milk Control Commission testified that on November 22, 1939 ¡he went to defendant’s farm and asked him where he could buy milk. Defendant directed him to his dairymaid. She sold him one gallon of fluid milk for 30 cents contrary to General Order No. A-39 of the Milk Control Commission then in force fixing the minimum retail price applicable to the transaction at 40 cents a gallon. There was corroboration of this witness by another investigator who was pres
 
 *331
 
 ent. Defendant offered no testimony. He was found guilty as charged and was sentenced to pay a fine of $25 with jail imprisonment for ten days as an alternative. On certiorari the lower court, in the absence of a record of testimony that defendant had instructed his servant to sell milk below the price fixed by law or that he had knowledge of the illegal sale, considered “the act of the dairymaid......voluntary and uncontrolled,” reversed the judgment and discharged the defendant. The Commonwealth appealed.
 

 In general, under the common law, one is not liable for the criminal acts of another in which he did not participate directly or indirectly. 14 Am. Jur., Crim. Law, §63; 2 Am. Jur., Agency, §383;
 
 Com. v. Johnston,
 
 2 Pa. Superior Ct. 317. But the common law rule has no application here. The offense was made so purely by statute and whether the penalty may be imposed, without direct proof of the master’s knowledge or assent, therefore, becomes a question of statutory construction. We cannot agree with the lower court that the transcript does not sustain the conviction merely because it fails to show that defendant was charged with knowledge of his servant’s illegal act. “Guilty knowledge or guilty intent is, in general, an essential element in crimes at the common law” but, “whether a criminal intent, or a guilty knowledge, is a necessary ingredient of a statutory offense, is a matter of construction,” to be determined “from the language of the statute, and in .view of the manifest purpose and design of the same”;
 
 Com. v. Weiss,
 
 139 Pa. 247, 21 A. 10. Intent need not be shown to support a conviction under a valid statute in the exercise of police power.
 
 Com. v. Zasloff,
 
 137 Pa. Superior Ct. 96, 8 A. ¿2d 801. In the Weiss case the defendant who sold oleomargarine in ignorance of the fact, was held liable for the penalty imposed by statute. In
 
 Com. v. Liberty Prod. Co.,
 
 84 Pa. Superior Ct. 473, in which numerous cases are col
 
 *332
 
 lected, it is said: “a mistake or omission, even though an innocent one, made in the line of his employment by an employee charged with the doing of something required to be done in order to render that lawful which otherwise, by a police regulation, would be unlawful, entails upon his employer responsibility for the illegal act resulting therefrom and subjects it to the penalty provided for such illegal act, unless the statute in terms limits it to wilful and intentional violation,” quoting the rule in 3 Greenleaf on Evidence, §21, “Where a statute [in the exercise of police powers] commands that an act be done or omitted, which, in the absence of such statute, might have been done or omitted without culpability, ignorance of the fact or state of things contemplated by the statute, jit seems, will not excuse its violation.” The reason for the rule is indicated by Chief Justice Cooley in
 
 People v. Roby,
 
 18 N. W. 365, (Mich.), quoted with approval in the Liberty Prod. Co. case, in this language: “Many statutes which are in the nature of police regulations, as this is, impose criminal penalties, irrespective
 
 pi
 
 any intent to violate them, the purpose being to require a degree of diligence for the protection of the public which shall render violation impossible.” See also,
 
 Com. v. Miller,
 
 131 Pa. 118, 18 A. 938.
 

 When defendant indicated to the purchaser that his dairymaid ,was in charge of sales he not only Recognized her as his sales agent but became responsible for her acts. In an action involving the violation of a statute of this kind, “A principal is p#ima facie liable for the illegal acts of an agent done in a general course of illegal business authorized by the principal......A master, also, may be liable for the negligence of a servant whom he negligently appoints or negligently controls. But it is otherwise if the agent be without authority, express or implied, and the act be out of the range of the agent’s business, and against the principal’s express and bona fide commands”: 1 Wharton
 
 *333
 
 Criminal Law, 12th Ed., ,§287. The unlawful sale by the servant or agent is prima facie evidence of assent thereto by the master or principal and will impose liability unless rebutted.
 
 Com. v. Park & Reed, 1
 
 Gray 553, (Mass.);
 
 Com. v. Nichols,
 
 10 Met. 259, (Mass.). The same rule was applied in
 
 Com. v. Johnston,
 
 supra, p. 332 where we held that it was for the defendant to prove that the unlawful sale by his employee was contrary to his express orders. See also
 
 Com. v. Scott-Powell Dairies,
 
 128 Pa. Superior Ct. 598, 194 A. 684;
 
 Com. v. Newhard,
 
 3 Pa. Superior Ct. 215.
 

 An examination of the Milk Control Act in the light of its purpose discloses a legislative intention to charge. a milk dealer with the duty of such care in the management of his ^business and the control of his servants that only a disregard by the servant of positive orders of the employer will relieve him from the penalty of §807. He cannot hide behind his own negligence and thus nullify the statute. Other sections of the act, imposing other duties, e. g., §§401, 608, specifically provide that proof of guilty knowledge or intent
 
 is
 
 essential to impose liability for failure to perform them. If it were the intention of §807 to relieve a proprietor except upon proof of his knowledge of sales, below the price fixed by law, the legislature would have said so. The omission is significant. From a practical viewpoint, actual knowledge of a principal would be difficult to prove except by the circumstances; what secret instructions were given could not, by any means, be shown.
 
 [2]
 

 The remaining questions raised by appellee call for little comment. The provision of our constitution, Art. 1, §9, guaranteeing the right of trial by jury “in
 
 *334
 
 prosecutions by indictment or information”
 
 [3]
 
 has no application to summary proceedings pursuant to an act passed in the proper exercise of the police power. “The guarantee of trial by jury does not extend to all offenses, but is restricted to such offenses as had been established prior to the adoption of the Constitution. Summary convictions were well known before the formation of the Constitution, and they are not expressly or impliedly prohibited by that instrument except insofar as they are not to be substituted for a jury, where the latter mode of trial had been previously established”:
 
 Com. ex rel. v. Heiman,
 
 127 Pa. Superior Ct. 1, 190 A. 479, citing numerous cases in support of the rule. See also authorities collected in Purdon Pa. Constitution, Note 35, p. 135.
 

 Defendant’s discharge cannot be justified on the ground, as contended by appellee, that the price fixed by the order of the commission is unreasonable and that we may take judicial notice that it is so. Establishing a. minimum retail price of milk is a valid exercise of the police power.
 
 Rohrer v. Milk Control Board,
 
 322 Pa. 257, 188 A. 338. Whether the commission violated the Constitution by exceeding the bounds of reasonableness, in establishing the selling price of milk, is a question which should have been raised at the hearing before the commission or by an appeal from that order. Without an appeal, as provided by the statute, the order became final and the reasonableness of the rate cannot be questioned collaterally.
 
 Com. v. Ziegler Dairy Co.,
 
 139 Pa. Superior Ct. 224, 11 A. 2d 669.
 

 Order reversed and the judgment of the alderman reinstated.
 

 [1]
 

 Sections 801 and 802 of the act prescribe the procedure and impose the duty upon the commission of fixing minimum and maximum wholesale and retail prices. The first paragraph of section 807 provides: “After the commission shall have fixed prices to be charged or paid for milk, whether by class, grade, use or otherwise, it shall be unlawful for a milk dealer or producer to sell or buy, or offer to sell or buy milk at any price below the minimum price applicable to the particular transaction.” Section 1001 provides the penalty “upon conviction thereof in a summary proceeding.”
 

 [2]
 

 The amendment of §807 by the Act (No. 177) of July 24, 1941, specifically imposing legal responsibility on the milk dealer for the act of his employee, in our view, is no more than a clarifying expression of legislative intent implied in the former act.
 

 [3]
 

 See note 4,
 
 Com. v. Kramer,
 
 146 Pa. 91, 22 A. 2d 46.
 

 
 *335
 
 Section 30 of the Act of July 24, 1941 (No. 177), which amended section 807 of the Act of April 28, 1937, P. L. 417, 31 PS § 700j — 807, provides, inter alia, that “it shall he unlawful for a milk dealer
 
 or handler
 
 or producer......,
 
 knowingly or unknowingly, or any other person knowingly, iby himself or through another, to sell or deliver,"
 
 etc., and that
 
 "The act of a director, officer, agent or other person, acting for or employed by a milk dealer shall be deemed the act of such milk dealer.”