Commonwealth *v.* Gorodetsky, Appellant.

Argued March 31, 1955. Before RHODES, P. J., HIRT, ROSS, GUNTHER, WRIGHT, WOODSIDE, and ERVIN, JJ.

*Stephen J. McEwen,* with him *Charles F. Moyer* and *John J. McCreesh, Jr.,* for appellant.

*Basil C. Clare,* Assistant District Attorney, with him *Raymond R. Start,* District Attorney, and *Joseph E. Pappano,* First Assistant District Attorney, for appellee.

OPINION BY RHODES, P. J., July 21, 1955:

This is an appeal by defendant who was convicted and sentenced on a bill of indictment charging him with possessing and selling, delivering, or giving away narcotic drugs in violation of the Act of July 11, 1917, P. L. 758, as amended, 35 PS §851 et seq.

The court below, having dismissed defendant's motions in arrest of judgment and for a new trial, sentenced defendant to pay a fine of $500, and to undergo

imprisonment in the Delaware County Prison for a minimum period of two years and a maximum period of two years and one day. See section 12 of the Act of July 11, 1917, P. L. 758, as last amended by the Act of June 19, 1953, P. L. 290, §1, 35 PS §865. Section 1 of the Act of July 11, 1917, P. L. 758, as amended, 35 PS §851, provides in part as follows: "Except as limited in section two of this act, the word 'drug,' as used in this act, shall be construed to include: (a) Opium; or (b) cocoa leaves; or (c) marihuana; (d) any compound or derivative of opium, cocoa leaves, or marihuana; or (e) any substance or preparation containing opium, cocoa leaves, or marihuana; . . ."

Section 2 of the Act of 1917, as amended, 35 PS §852, states: "The word 'drug' shall not be construed to include—(1) preparations and remedies and compounds which do not contain . . . more than one-fourth of a grain of morphine, . . . if a solid or semi-solid, in one avoirdupois ounce; . . ."

It is provided in section 4 of the Act of 1917, as amended, 35 PS §854, that "No person shall have in his possession or under his control, or deal in, dispense, sell, deliver, distribute, prescribe, traffic in, or give away any of said drugs."

The evidence clearly and definitely establishes that defendant possessed and sold, delivered or trafficked in morphine in violation of section 4 of the Act of 1917, as amended, 35 PS §854, and that he did not come within any of the exceptions provided in this section. Defendant was a bartender at the Green Lantern Inn, 523 Baltimore Avenue, East Lansdowne, Delaware County. There had been complaints to the police about certain activities at this place. Defendant had received morphine tablets or pills from one Joseph Getcuski. With knowledge of their nature and content, defendant on or about February 10, 1954, delivered three of such tab-

lets to one Savarino Randazzo who was acting as a police agent. On March 11, 1954, Randazzo again received from defendant, at the same place, a bottle containing five of these morphine tablets. After each occasion, as prearranged, Randazzo turned over the tablets to a police officer; and they were received intact by a chemist for analysis. On the second occasion, defendant wrote on a slip of paper "¼ grain each morphine" and gave the paper to Randazzo. This transaction was witnessed by Detective McGeehan, who also testified to the conversation between Randazzo and defendant. There was testimony that the tablets were a derivative of opium, i.e., morphine sulphate, and that they were the type of tablets used in illicit narcotic trade. A qualified chemist testified there was more than one-fourth of a grain of morphine in each of the two lots received by Randazzo from defendant. The agreed price, although not paid, was $2.50 per tablet.

Appellant's first contention is that the bill of indictment was defective because it failed to refer to the statute on which it was based, and that as a consequence he could not determine which statute he was charged with having violated. This question was not raised in the court below, and, unless it involves some basic or fundamental error seriously affecting the merits of the case and imperatively calling for reversal, it will not be considered on appeal. *Com. v. Schultz*, 170 Pa. Superior Ct. 504, 512, 87 A. 2d 69. No basic or fundamental error is presently involved, and appellant's contention has no validity. Appellant refers to two statutes: The Act of May 8, 1909, P. L. 487, 35 PS §821 et seq., which relates to the sale or disposition of cocaine, or its derivatives, and the Anti-Narcotic Act of July 11, 1917, P. L. 758, as amended, 35 PS §851 et seq. The violation of the Act of 1909 is a misdemeanor, while the violation of the Act of 1917 is a

felony. The bill of indictment charged that defendant "did have in his possession or under his control, or deal in certain narcotic drugs, and did dispense, sell, deliver, distribute, traffic in, or give away, any of said narcotic drugs to Savarino Randazzo, contrary to the Act of the General Assembly . . ."

Appellant's argument is to the effect that the indictment insufficiently informed him of the crime with which he was charged, since there were two possible crimes for which he could have been indicted. The body of the indictment did not contain a particular reference to the act upon which it was based; and this was not necessary. *Com. v. Sabo,* 83 Pa. Superior Ct. 166, 168; *Com. v. Grant,* 121 Pa. Superior Ct. 399, 183 A. 663. But appellant was fully aware of the nature of the charge against him and was prepared to meet it. Although the endorsement on a bill of indictment is not a part thereof (*Com. ex rel. Wolcott v. Burke,* 173 Pa. Superior Ct. 473, 477, 98 A. 2d 206), this particular bill did have endorsed thereon "Possessing and Dispensing Narcotic Drugs," and a reference to section 4 of the Act of July 11, 1917, P. L. 758, giving the Purdon's citation as 35 PS §854. But in addition thereto, appellant's trial counsel, in moving for a directed verdict at the close of the Commonwealth's case, stated to the court: "This defendant was indicted under an indictment charging him with the unlawful possession of narcotics in violation of Title 35 Purdons, Section 854." If appellant had any doubt as to the nature of the charge, he could have asked that it be made more specific, or he could have made a timely objection to the indictment. Appellant is in no position now to claim, even if it were permissible for him to do so, that he did not know which statute he was accused of violating.

The second contention of appellant is that the bill
of indictment was defective in substance as it did not
set forth the quantity of narcotics possessed where pos-
session of less than a certain amount would not be a
crime. In order to be a violation of section 4 of the
Act of July 11, 1917, P. L. 758, 35 PS §854, the ac-
cused must have had in his possession, or sold or de-
livered, more than one-fourth of a grain of morphine
per avoirdupois ounce. Appellant argues that the in-
dictment was defective in substance because it merely
charged him with the possession and transfer of "cer-
tain narcotic drugs," and did not set forth the amount
of narcotic content; and that for this reason it failed
to charge him with any crime. There is no merit in
appellant's argument in this respect. The Criminal
Procedure Act of March 31, 1860, P. L. 427, §11, 19
PS §261, provides that every indictment shall be
deemed and adjudged sufficient and good in law which
charges the crime substantially in the language of the
Act of Assembly prohibiting it. That was done in this
case. The contention of appellant is similar to that
raised in *Com. v. Batch*, 120 Pa. Superior Ct. 592, 183
A. 108. In that case the indictment charged the de-
fendant with violating sections 602 (b) and 602 (d)
of the Act of November 29, 1933, P. L. 15, in that he
unlawfully kept certain liquor within the Common-
wealth. In answer to defendant's argument that the
indictment was fatally defective because, among other
reasons, it failed to set forth the degree of unlawful
content, we said (page 596 of 120 Pa. Superior Ct.,
page 109 of 183 A.) : "We find no merit in the criticism
that the indictment failed to set forth the place where
the liquor was found, the quantity thereof, and *the de-
gree of unlawful content.* If the indictment charges
the crime substantially in the act of assembly, it is suf-
ficient in law and if the defendant desired this infor-

mation, the proper course for him to have adopted was to file a petition for a bill of particulars whereupon he would have obtained the information." [Italics supplied.]

The third question presented by appellant relates to the sufficiency of the evidence presented by the Commonwealth to establish the content of the tablets which were possessed and sold or delivered by appellant. The testimony established that the quantity of morphine possessed and delivered by appellant was in violation of the act. The chemist testified that he made an analysis of representative samples[1] taken from these tablets, and that from this analysis he determined there was at least one-fourth of a grain of morphine in the three tablets which had been acquired from appellant, and more than one-fourth of a grain in the five tablets subsequently acquired from him. He said there was no doubt that each lot contained more than one-fourth of a grain of morphine. The first lot weighed .625 grains and the second lot 1.875 grains. The Commonwealth also introduced into evidence a slip of paper, admittedly written by appellant, on which were written the words "¼ grain each morphine." This paper was given to the Commonwealth's witness Randazzo at the time of delivery of the five tablets on March 11, 1954, in the presence of Detective McGeehan. It was shown that appellant wrote this note in reply to an inquiry as to how "powerful" the tablets were. The evidence was clearly sufficient to establish a narcotic content of the tablets, and that each lot contained morphine in excess of one-fourth of a grain in one avoirdupois ounce. Cf. *Com. v. Bozzi,* 169 Pa. Superior Ct. 206, 82 A. 2d 303.

---

[1] The chemist testified: "Well, I took representative samples which in my judgment after some 35 years' experience with this sort of thing was representative of the contents of each vial."

Appellant states the fourth question presented on this appeal as follows: Did not the trial judge err in refusing to charge the jury that it must acquit the defendant if it finds there is a reasonable doubt as to whether defendant knew the drugs were narcotics? The appellant admitted that he had received the tablets from one Joseph Getcuski, and that he had given them to Commonwealth's witness Randazzo. Appellant testified as follows: "Q. So that when you gave Randazzo these pills you knew that they were, from what you had been told by Getcuski, that they were quarter grain morphine tablets; is that correct? A. He said they were, but I did not believe it. Q. Oh, you did not believe it? A. I would not know morphine if I saw it. Q. But you were told that they were quarter grain morphine tablets? A. That is right. . . . Q. And on that occasion you wrote this little yellow slip out in which you put on here, one-quarter grain each morphine? A. That is right. Q. Isn't that true? A. That is my writing, sir, yes. Q. So that on the second time that these pills were dispensed by you—A. Yes. Q.—you knew they were morphine? A. I was not sure, sir, no." Appellant now argues that the jury should have been instructed by the trial judge: "If the Jury find that there is a reasonable doubt as to whether the Defendant knew that the pellets which had been in his possession were narcotics, you will find him not guilty." The refusal of the trial judge to so charge was not error in this case. By his own admission, appellant was engaged in handling narcotics illegally. His defense was that when possessing and disposing of these tablets he was not sure that they were morphine. When a person engages in such illicit business or traffic he does so at his peril, and he cannot set up as a defense his alleged ignorance of the nature and quality of the article involved. *Com. v. Weiss*, 139 Pa. 247, 252, 21 A. 10.

In appellant's argument it is conceded that the Legislature may forbid possession of certain dangerous and habit-forming drugs in the exercise of the police power in the interest of public health, morals, and welfare. It is argued, however, that the Legislature did not intend to eliminate criminal intent or guilty knowledge as an essential element of the crime under the Anti-Narcotic Act of 1917; and that appellant should have actual knowledge of what he possessed before being convicted of the crime with which he was charged.

Our courts have frequently said that criminal intent or guilty knowledge is, in general, an essential element in crimes at common law; that the essential element of crime is the intent to commit it, or the willfulness of it. *Com. v. Weiss,* supra, 139 Pa. 247, 250, 21 A. 10; *Com. v. Junkin,* 170 Pa. 194, 199, 32 A. 617; *Com. v. Borek,* 161 Pa. Superior Ct. 200, 202, 203, 54 A. 2d 101; *Com. v. Fine,* 166 Pa. Superior Ct. 109, 112, 70 A. 2d 677. But criminal intent or guilty knowledge need not always be shown to support a conviction under a valid statute in the exercise of the police power. *Com. v. Zasloff,* 137 Pa. Superior Ct. 96, 8 A. 2d 801; *Com. v. Jackson,* 146 Pa. Superior Ct. 328, 331, 22 A. 2d 299. Moreover, it is for the Legislature to determine whether the threatened injury to the public is sufficient to justify an absolute prohibition. *Com. v. Weiss,* supra, 139 Pa. 247, 251, 21 A. 10. Whether or not criminal intent or guilty knowledge is a necessary ingredient of a statutory offense, therefore, is a matter of construction to be determined from the language of the statute and in view of the manifest purpose and design of the same. *Com. v. Weiss,* supra, 139 Pa. 247, 251, 21 A. 10; *Com. v. Fine,* supra, 166 Pa. Superior Ct. 109, 113, 70 A. 2d 677; *Com. v. Hackney,* 117 Pa. Superior Ct. 519, 524, 178 A. 417. The purpose of the

Anti-Narcotic Act of 1917, as stated by the Legislature, is: "For the protection of the public health by regulating the possession, control, dealing in, giving away, delivery, dispensing, administering, prescribing, and use of certain drugs, . . ." The purpose of the act would be defeated if proof of criminal intent or guilty knowledge was required, since it would usually be impossible to prove, beyond a reasonable doubt, as appellant contends, that anyone illegally possessing or unlawfully dispensing such drugs had actual knowledge of their narcotic content. That the Legislature did not require criminal intent or guilty knowledge to be shown in order to punish those who traffic in such drugs is further evidenced by the language of the statute itself. In *Com. v. Jackson,* supra, 146 Pa. Superior Ct. 328, 333, 22 A. 2d 299, 301, 302 (affirmed in 345 Pa. 456, 28 A. 2d 894), in referring to the Milk Control Act, Judge HIRT stated: "Other sections of the act, imposing other duties, . . . specifically provide that proof of guilty knowledge or intent is essential to impose liability for failure to perform them." And, after pointing out that knowledge was not required in the section under consideration, he further said: "The omission is significant." Cf. *Com. v. Fine,* supra, 166 Pa. Superior Ct. 109, 114, 70 A. 2d 677. What we said in the *Jackson* case is applicable here. Section 12 of the Act of July 11, 1917, P. L. 758, as amended, 35 PS §865, provides, in subsection (a), that any person who violates any provision of the act shall be guilty of a felony. But, in subsection (c), if the violation is by a corporation, copartnership, or association, in order to convict for any such violation, a director or officer of the corporation, or any member of the copartnership or association, or their agents and employes, guilty knowledge of the fact is required. The only reasonable inference to be drawn from the omis-

sion of the requirement of criminal intent or guilty knowledge to convict an individual not coming under subsection (c) is that the Legislature did not intend such requirement to be an essential ingredient of the statutory offense. See *United States v. Balint*, 258 U. S. 250, 42 S. Ct. 301, 66 L. Ed. 604; *People v. Darby*, 114 Cal. App. 2d 412, 250 P. 2d 743; *State v. Linden*, 156 Wash. 452, 287 P. 16. Considering the purpose sought to be accomplished by the Legislature, the language of the statute itself, and the evidence presented, the trial judge was correct in refusing to charge the jury as appellant requested.

Finally, appellant refers to section 12 of the Act of 1917, as amended, 35 PS §865, as requiring a mandatory jail sentence for a first offender, such as appellant. If it could be said that his argument questioning the validity of that section has any purpose, it was not raised in the court below. This section sets forth that any person who possesses and traffics in drugs, in violation of the provisions of the act, shall be guilty of a felony; and, upon conviction thereof, "shall be sentenced as follows: For a first offense, to pay a fine not exceeding two thousand dollars ($2000) and to undergo imprisonment of not less than two (2) years and not exceeding five (5) years; . . . Except in case of conviction for a first offense for violation of the provisions of this subsection, the imposition or execution of sentence shall not be suspended and probation or parole shall not be granted until the minimum imprisonment herein provided for the offense shall have been served." It suffices to say that it is constitutionally permissible for the Legislature to prescribe the punishments for violations of our penal laws. *Com. v. Bozzi*, 178 Pa. Superior Ct. 224, 116 A. 2d 290.

Judgment of sentence is affirmed, and it is ordered that appellant appear in the court below at such time

as he may be there called and that he be by that court committed until he has complied with his sentence, or any part of it which had not been performed at the time the appeal was made a supersedeas.