## Commonwealth v. Mostowski

*F. Porter Wagner*, District Attorney, for Commonwealth.

*E. Robert Marks*, for Borough of Danville.

*Joseph Dutka*, for defendant.

KREISHER, P. J., March 5, 1959.—At approximately 6:30 a.m., April 11, 1958, a Danville Borough policeman, while on patrol, caused the tractor-trailer outfit of the William Brojeck Lumber Company of Montdale, which was loaded with rough sawed lumber, to be weighed at the borough scales, and the unit was found to weigh 67,440 pounds. The authorized limit for this unit was 60,000 pounds plus three percent, or 61,800 pounds.

Thereupon, the driver was taken before a justice of the peace where a charge of overweight was lodged against him which resulted in the imposition of a fine and costs in a total sum of $655.

The matter came before the court on appeal and after a hearing de novo, the record having been transcribed, we must now dispose of the same.

The defense is, to say the least, a new and novel one and may be briefly stated as a justifiable excuse by reason of the elements.

The load consisted of rough sawed boards of hard maple, soft maple and beech, which were partially dried and loaded during a light drizzle between the hours of 1 and 2 p.m. on April 10, which was the day preceding the arrest.

At approximately 3 p.m., the loaded unit was taken to the Keyser Valley Coal Pocket Scales at Scranton, where a weight slip was issued showing a gross weight of 56,600 pounds.

The load was then taken to defendant's home at Olyphant, R. D., which is in the vicinity of Scranton, where it was parked outside without a tarpaulin until 3 a.m.

Defendant driver then started on his journey to make delivery at the Rochelle Furniture Company in Montgomery, Lycoming County.

The light drizzle of the day before turned to rain and snow during the night and defendant testified that it rained quite hard during the trip from Scranton to Danville.

Defendant offered into evidence a duplicate invoice by the said furniture company for the load which was delivered on April 12 by two trucks, which were required to complete the journey because of the excessive overweight, and this invoice indicates the original load consisted of 8,579 board feet.

Defendant also offered into evidence a book of rules for the measurement and inspection of lumber by the National Hardwood Lumber Association, which, on page 98, gives the approximate weight of dried wood as compared to green wood.

Without quoting the exact figures for the different types of wood, the table shows the average approximate weight per thousand board feet of green wood to be approximately 5,500 pounds and the weight of dry wood to be 4,000 pounds, and therefore it is the contention of the defense that the excessive overweight was occasioned by the absorption of moisture from the time the load was weighed at Scranton until the same was weighed in Danville, approximately 15 or 16 hours later.

The defense admits this lumber when loaded was only partially air-dried and probably weighed 200 or 300 pounds per thousand more than stated in the table for dried wood, but, even so, because of its long exposure to the elements, it absorbed sufficient moisture

to reach the weight of green wood, and this accounts for the additional 10,840 pounds.

Defense further admits the boards were loaded flat in stacks, and no tarpaulin was placed over the load.

Now, even if we accept the correctness of the figures submitted by defendant, which incidentally are quite doubtful in our opinion, and could be dwelled upon at considerable length if we were so inclined, but deem it unnecessary for this opinion, does defendant's explanation state a good and legal defense to the alleged violation?

Article IX of The Vehicle Code of May 1, 1929, P. L. 905, which regulates the size, weight and construction of vehicles permitted to use the public highways of Pennsylvania has been subjected to the constant attention of the legislature to the end that it has been frequently amended, especially by increasing the maximum weight of the load permitted for the various classes of commercial vehicles.

These regulations have always been held constitutional and well within the police power of the State to regulate the use of the highways, as they are intended both to prevent damage to our highways and bridges and to promote highway safety.

The last of many amendments to this section became effective on January 1, 1957, 75 PS §453, and provides. inter alia:

"(d) Whenever two vehicles are used or operated as a combination on any highway, . . . the gross weight of the combination shall not exceed the gross weight specified as follows:

| "Combination | Maximum Gross Weight in Pounds. |
|---|---|
| "Truck tractor and single-axle semi-trailer | 50000 |
| "Truck tractor and two-axle semi-trailer | 60000 |
| "Commercial motor vehicle and trailer | 62000." |

The penalty provision provides:

"Any person operating any vehicle or combination of vehicles, upon any highway, with a gross weight or with weight on any axle or wheel exceeding by more than three (3) per centum the maximum weight allowed in that particular case, shall, upon summary conviction before a magistrate, be sentenced to pay the costs of prosecution and a fine for each and every pound of excess above the maximum weight allowed according to the following schedule: . . .

"For each additional 500 pounds, or part thereof, over 6500 pounds, $600.00 plus $50.00 for each additional 500 pounds, or part thereof: Provided, That in any case, in which there shall be concurrent violations of more that one of the clauses of this section prescribing maximum weights, the penalty imposed shall be for violation of that clause which produces the greatest fine, but no penalty shall be imposed for violation of any other such clause. . . .

"For the enforcement of this section all peace officers shall have the power to arrest on view for violation of any of the provisions of this section."

An examination of the code reveals no exceptions to the foregoing rule, which incidentally was increased from 45,000 pounds in the prior act to the present 60,000 pounds, except section 905, as amended, 75 PS §455, which provides that the Secretary of Highways and the local authority upon an application in writing and payment of a fee on cause shown may issue a special permit for an excessive load.

In a somewhat similar case, Commonwealth v. Olshefski, 64 D. & C. 343 (1948), we discussed the distinction between crimes mala in se and mala prohibita, and concluded:

"It is no defense to a prosecution for driving an overloaded truck in violation of The Vehicle Code that defendant had first obtained a weight certificate from

a licensed weighmaster which indicated that the truck was not overloaded, for the offense is complete without any improper intent." (Syllabus)

1 Wharton's Criminal Law 572, §399, reads in part, as follows:

"In the early history of the common law such acts only were deemed criminal as had in them the vicious element of an unlawful intent, indicating a deviation from moral rectitude; but this quality has ceased to be essential, and now acts which are unobjectionable in a moral view, except in so far as being prohibited by law makes them so, constitute a considerable portion of the criminal code of every state. Under such statutes the act is expressly prohibited, without reference to the intent or purpose of the party committing it; and is usually of the class in which the person committing it is under no obligation to act, unless he can do so lawfully, and it is no defense that the person acted honestly and in good faith, under a mistake of fact, for he is bound to know the fact as well as the law, and he acts at his peril. Under such statutes guilty knowledge is not one of the essential ingredients of the offense."

In the case of Commonwealth v. Gorodetsky, 178 Pa. Superior Ct. 467, on page 476 of the opinion by Rhodes, P. J., it is stated:

"Our courts have frequently said that criminal intent or guilty knowledge is, in general, an essential element in crimes at common law; that the essential element of crime is the intent to commit it, or the willfulness of it. Com. v. Weiss, supra, 139 Pa. 247, 250, 21 A. 10; Com. v. Junkin, 170 Pa. 194, 199, 32 A. 617; Com. v. Borek, 161 Pa. Superior Ct. 200, 202, 203, 54 A. 2d 101; Com. v. Fine, 166 Pa. Superior Ct. 109, 112, 70 A. 2d 677. But criminal intent or guilty knowledge need not always be shown to support a conviction un-

der a valid statute in the exercise of the police power. Com. v. Zasloff, 137 Pa. Superior Ct. 96, 8 A. 2d 801; Com. v. Jackson, 146 Pa. Superior Ct. 328, 331, 22 A. 2d 299. Moreover, it is for the Legislature to determine whether the threatened injury to the public is sufficient to justify an absolute prohibition. Com. v. Weiss, supra, 139 Pa. 247, 251, 21 A. 10. Whether or not criminal intent or guilty knowledge is a necessary ingredient of a statutory offense, therefore, is a matter of construction to be determined from the language of the statute and in view of the manifest purpose and design of the same. Com. v. Weiss, supra, 139 Pa. 247, 251, 21 A. 10; Com. v. Fine, supra, 166 Pa. Superior Ct. 109, 113, 70 A. 2d 677; Com. v. Hackney, 117 Pa. Superior Ct. 519, 524, 178 A. 417."

In the very scholarly and extensive discussion by Rollin M. Perkins on "Ignorance and Mistake in Criminal Law" in 88 U. of Pa. L. Rev. 35, under the discussion headed "Ignorance or Mistake of Fact" beginning on page 54, we find the following:

". . . it may be stated as a general rule (subject, however, to exceptions in certain cases) that mistake of fact will disprove a criminal charge if the mistaken belief is (a) honestly entertained, (b) based upon reasonable grounds and (c) of such a nature that the conduct would have been lawful had the facts been as they were reasonably supposed to be.

## "HONEST AND REASONABLE BELIEF

"The term 'honest belief', and equivalent phrases, are sometimes used to express two different ideas: (1) that the belief must have been sincere and (2) that what was done would have been proper had the facts been as they were mistakenly supposed to be. It will be more convenient, however, to deal with these matters separately, and the second will be reserved for subsequent attention. As to the first no more need be

said than that the possibility of excuse based upon mistake of fact never has any application 'where there is no honest belief . . . but . . . a dishonest pretense is resorted to in the endeavor to escape punishment.' The mistaken belief must always be 'honest and real' rather than 'feigned'; sincere rather than a mere 'pretext'.

"While there is no exception to the requirement that the mistaken belief of the factual situation must be genuine, the question whether it must be based upon reasonable grounds is not so simple. Undoubtedly the second requirement is frequently present, as indicated by the repeated occurence of such phrases as 'reasonable grounds', 'well-grounded', 'reasonable ground for believing', 'due care to ascertain', 'might reasonably have been expected to induce such a belief in a man of ordinary firmness and intelligence', 'not superinduced by fault or negligence', or 'it must also be such a mistake as does not arise from a want of proper care.'

"If no specific intent or other special mental element is required for guilt of the offense charged, a mistake of fact will not be recognized as an excuse unless it was based upon reasonable grounds."

It is to be noted from the foregoing quotation that the author at the outset recognizes exceptions to the general rule and these are both apparent and real exceptions. Where the legislature in the exercise of its police power creates an absolute liability, the general rule does not apply. The reason for this holding is stated in the case of Commonwealth v. Fine, 166 Pa. Superior Ct. 109, on page 113, as follows:

"The reasons for sustaining legislation which makes certain acts crimes and punishable as such without regard to defendant's motive, intent, reasonableness or good faith, are stated to be: (1) To require a degree of diligence for the protection of the public and (2) convenience of enforcement."

The second exception to the general rule the author of the above quoted review article readily recognizes and may be briefly stated, that ignorance or mistake of fact will not exempt one from criminal responsibility if due to culpable negligence. Naturally, this does not apply to an offense which requires a specific intent in which case the ignorance or mistake of fact negatives the existence of such intent. For instance, it has been said in this regard that a person could not commit the crime of larceny by negligence. But, on the other hand, it is readily recognized that a pure legislative regulation in the exercise of the police power can be criminally violated by reason of negligence.

Now, even if we choose to disregard the exception to the general rule of absolute liability by reason of legislative edict when we examine the facts of this case, do not the facts clearly indicate that the second exception to the general rule applies by reason of defendant's culpable conduct?

As set forth in the above quoted review article, the writer clearly indicates that for a mistake of fact to be a defense, there must be an honest belief, that is, that the accused had reasonable grounds for believing he was within the law by the exercise of his ordinary intelligence and prudence.

As stated by the author: "As to the first, no more need be said than that the possibility of excuse based upon mistake of fact never has any application 'where there is no honest belief . . . but . . . a dishonest pretense is resorted to in the endeavor to escape punishment'. The mistaken belief must always be 'honest and real' rather than 'feigned'; sincere rather than a mere 'pretext' ": 88 U. of Pa. L. Rev. 55.

It is our candid opinion had defendant exercised reasonable diligence to ascertain the facts by use of his ordinary skill and intelligence, the result would

have been obvious, and it is our opinion that a reasonably prudent person desiring to transport this type of cargo in the admitted inclement weather which existed even during the loading, would have readily foreseen the necessity for placing a tarpaulin over the load to protect it from the elements and avoid the absorption of moisture in excess of five tons.

Defendant's own exhibit indicates that he had knowledge of the difference in the weight of the dry wood as compared to green or saturated wood, and therefore he should have reasonably known the approximate increase in the weight of his load under the weather conditions existing for the period of time the same was bound to be exposed, and therefore, without relying upon the absolute liability which is conceivably present, we also conclude the defense of mistake of fact is not a reasonable one and cannot prevail.

We could, in addition to the foregoing, take up the credibility of the witnesses for the defense and point to a number of items that come to our mind which seem to corroborate our conclusion. For instance, common intelligence seems to indicate that unquestionably the boards on the top of the load would absorb some moisture, but we cannot for the life of us understand how the bulk of the load underneath absorbed the amount of moisture here alleged. We might mention the time element involved, which indicates perhaps that defendant chose to make the journey at his peril knowing of the overweight condition, believing between the hours of 3 a.m. and 6 a.m. the roads would not be patroled.

We could point out that there is no evidence showing when the trees from which these boards were sawed were cut, and therefore their exact state of moisture content when loaded is a matter of pure conjecture.

An examination of the weight certificate issued by the Keyser Valley Pockets does not identify to our

satisfaction that it was the same load of lumber as that weighed by the officer the following day.

Therefore, without further discussion in this already too lengthy opinion, we enter the following:

*Order*

And now, to wit, March 5, 1959, the appeal in the above captioned case is dismissed at the costs of defendant.