**GOVERNMENT OF THE VIRGIN ISLANDS,**
**Plaintiff**

**v.**

**GEORGE CONRAD, Defendant**

No. 1768-1960

Municipal Court of St. Thomas and St. John

November 23, 1960

PETER O'DEA, ESQ., Assistant Attorney General, *for plaintiff*

FRANCISCO CORNEIRO, ESQ., *for defendant*

MICHAEL, *Municipal Judge*

This is a matter in which the defendant is charged with two offenses in violation of two of the regulations promulgated by the Commissioner of Health, under authority of Title 19, section 1404, of the Virgin Islands Code (19 V.I.R.&R. § 1404–1 et seq.).

The defendant challenges the validity of these regulations on three grounds and his attorney, Francisco Corneiro, Esq., has submitted a memorandum of law thereon. In answer thereto, the plaintiff, represented by Peter O'Dea, Esq., Assistant Attorney General, has also submitted a memorandum of law, both of which the court has considered.

Briefly, the position of the defendant is:

(1) That in view of the amendment of sec. 1404 of Title 19, transferring the rule-making authority from the Commissioner of Health to the Commissioner of Public Works, the regulations on the same subject matter, which were promulgated by the Commissioner of Health before the amendment, were ipso facto repealed or nullified;

(2) That the said regulations, if considered to be still in force and effect, have exceeded the authority given in the basic law by providing for storage and disposal of "rubbish", instead of providing for the storage and disposal of "garbage" only; and

(3) That the regulations are invalid, with particular reference to sec. 1404-53 (19 V.I.R.&R.), in that the burden of keeping premises from accumulation of garbage, etc., is placed upon the owner without notice and make him criminally liable without fault, and as such, repugnant to the requirements of due process.

In considering the first point, whether the regulations are still in force and effect, the defendant discussed the history of the said regulations, calling the court's attention to the fact that sec. 98 of Act (May 16, 1957, No.) 160, (19 V.I.C. § 1404 note) which Act enacted the Virgin Islands Code into law, specifically continued the rules and regulations promulgated pursuant to section 1404 of Title 19 of the Code. He concludes, therefore, that inasmuch as the Legislature did not specifically continue the rules and regulations when it amended Title 19, section 1401, of the Virgin Islands Code, they were impliedly repealed.

It appears to the court that the necessity of specifically continuing the rules and regulations at the time the Code was enacted into law was not present when the Legislature amended section 1401. It was necessary to specifically provide for the continuation of any and all regulations which the Legislature intended to be continued when the Code was to become effective, because the Code itself, in Title 1, section 5, provided for the repeal of "all local laws, ordinances, resolutions, regulations and executive orders, or parts thereof, heretofore having application in any part of the Virgin Islands . . ."

This being the situation at the time, in order to have rules and regulations concerning the health of the community, it was necessary to specifically provide for the continuance of the rules under consideration.

No such situation existed when the Legislature amended section 1401, because the only thing it did was

to change the rule-making authority. This change of authority to make rules did not REPEAL the existing rules and regulations issued under the authority of the section.

■ ■ As we know, a repeal is the abrogation or destruction of a law by a legislative act. It may be either express or implied. It is express when it is literally declared repealed by a subsequent law; it is implied when the new law contains provisions contrary to or irreconcilable with those of the former law.

An examination of the amendment shows no such repeal, neither express nor implied, for the amendment only changed the rule-making authority, but did not abrogate the rules promulgated by the former rule-making authority.

■ Under section 1404 the rules and regulations promulgated by the Commissioner of Health and approved by the Governor were given the force and effect of law. It must be presumed that the Legislature knew this, and if it intended to repeal these rules which had the effect of law, it would have expressly repealed them at the time it amended the section.

To adopt the position of the defendant which is being urged upon the court is to say that there are no rules and regulations concerning the storage and disposal of garbage in the community, and there will be none until the Commissioner of Public Works gets around to issuing rules and regulations. To the court this could not have been the intention of the Legislature, and the defendant has not shown to the court any authority holding that rules and regulations promulgated by one agency or authority covering a certain subject matter are ipso facto repealed solely by the change of the rule-making agency or authority by the Legislature.

■ The court therefore holds that the rules and regu-

lations are still in force and effect until they are abrogated or superseded by rules and regulations issued by the Commissioner of Public Works, or repealed by the Legislature itself.

In his second point, the defendant argues that the rules and regulations exceed the authority given under the law, as they provide not only for the storage and disposal of "garbage," but also of "rubbish."

Section 1404 gave the Commissioner of Health the power to make rules and regulations for the purpose of IMPLEMENTING and enforcing any or all of the provisions of subchapters I and II of the chapter under consideration. If we consider the definition of the word IMPLEMENT, we find that it means, inter alia, to fill out or supplement, or to supply a want.

While the Legislature used the word "garbage" and did not give a definition thereof, it is the court's opinion that it was its intention to cover all kinds of refuse. Inasmuch as the Legislature has not provided in any other law for the disposal of "rubbish" which may prove harmful to the health of the community during the time the regulations have been in force and effect, it seems evident that in its use of the word "garbage" it was its intention to include "rubbish," which inclusion is neither unique, singular, nor uncommon.

I believe the definition of garbage given by the court in the case of Iler v. Ross, 90 N.W. 869, 870, and other cases cited by the Attorney General in his brief, clearly brings out this point. If the restricted ORIGINAL definition of the lexicographers were given to the word "garbage" under our law, there would be no authority in this jurisdiction to take care of or to supervise the storage and disposal of any other refuse.

Furthermore, that it was the intention of the Legislature to include all kinds of refuse in the use of the

word "garbage," seems also to be borne out by the fact that in continuing the regulations when the Code was adopted and in its subsequent amendment of the section, it *did not* define the word "garbage" in a manner to exclude other refuse.

It is therefore the court's opinion that in giving the Commissioner the power to implement the provisions of the statute, the Commissioner did not exceed the authority given in providing for the storage and disposal of "rubbish."

Notwithstanding the above, it appears to the court that regulation 1404-56 (19 V.I.R.&R.) as written, the violation of which section the defendant is charged, is unreasonable in certain respects, in that it provides for the storage of "rubbish," as distinguished from garbage, in "water-tight" containers.

Section 1401 of the law provides that "garbage" shall be stored in receptacles "properly covered." The court has already held that garbage as used in the section includes "rubbish"; but the court does not believe that the phrase "properly covered" could be expanded to mean that boxes, old newspapers, magazines, etc., as distinguished from organic matter, should be stored in "water-tight" containers.

Regulation 1404-57 (19 V.I.R.&R.) seems to make a distinction between "garbage" and "rubbish," for, in providing what amount may be put out for collection at any one time, it states: "Business and commercial establishments TWO 25-gallon containers for garbage, and FOUR 25-gallon containers for rubbish.

However, this observation of the court does not in any way invalidate the section as a whole. Moreover, it is not pertinent to the case of the defendant, inasmuch as he is charged with "depositing garbage in the street not enclosed in a suitable water-tight container," and there

was evidence that "garbage," organic matter, to wit, "spoiled potatoes," were deposited by the defendant in an open container.

The third point raised by the defendant is that the regulations are invalid, in that the burden of keeping premises from accumulations of garbage is placed upon the absentee owner without notice and make him criminally liable without fault, and as such a violation of due process.

Under the police power of a state or territory the question of placing upon the owner the burden of keeping premises in repair, free from the accumulation of rubbish, of doing or refraining from doing certain things menacing to health, public safety or welfare, is not new. See State Board of Tenement House Supervision v. Bierman, 96 Atl. 662, 88 N.J. Law 467; Commonwealth v. Weiss, 139 Pa. 247, 21 Atl. 10; 11 L.R.A. 530. There is no dearth of cases on this point and the Assistant Attorney General has cited a few in his brief.

Placing this burden upon the owner is a common-sense proposition, for the owner must of necessity have more interest in his property than tenants, and in requiring that he see to it that certain health-menacing conditions be not permitted to exist, is placing it upon the ONE person upon whom the authorities may rely. If the duty were not placed upon the owner, he, by renting or leasing his property to irresponsible persons, could very well shift the burden and thereby nullify the purposes of the law. Weiner v. Leroco Realty Corp., 17 N.E.2d 796. In some jurisdictions, however, the duty or burden is placed upon both the owner and person in possession.

In considering the question of regulations with reference to due process, we find a very interesting exposition of the subject in 12 Am. Jur. Constitutional Law § 648, p. 365. It states as follows:

157

"The power of government to regulate extends to almost limitless fields. A great many of the functions of legislation are included in this power. It is obviously true that regulation is not per se a violation of the due process of law guaranty. Laws enacted to further the general welfare, which do not appropriate private property, even though they in fact destroy private rights, are not inhibited by the Constitution of the United States. Burdens and expenses of various types may be imposed under the exercise of the police power without compensation and without in any way violating the constitutional guaranties as to due process of law. The guaranty of due process demands only that the law shall not be unreasonable, arbitrary, or capricious and that the means selected shall have a real and substantial relation to the object sought to be attained."

■ It is clear to this court that the object sought to be attained by making the owner responsible for keeping his premises free from accumulation of garbage, etc., as required by the regulation, whether he is in possession or not, is not unreasonable, arbitrary or capricious.

In answer to the argument of the defendant to the effect that the regulations set no standard to determine an objectionable accumulation, it may be well to remark that the regulation under consideration does set certain standards or conditions which must be shown to the court to exist before a violation thereof may be adjudged. For not only must there be an accumulation of any of the items enumerated in the regulation be shown to exist, such as garbage, rubbish, rags, tin cans, paper, empty barrels, boxes, etc., but also that "because of its character, condition or improper storage, it may invite the breeding or collection of flies, mosquitoes, or rodents, or which may in any other manner prejudice the public health."

■ For the reasons stated, the court holds that the regulation placing the burden upon the owner as described above is not invalid, and repugnant to the requirements of due process.

 In summary, therefore, it is the opinion of this court that secs. 1404-53 and 1404-56 (V.I.R.&R.) of the regulations issued by the Commissioner of Health under authority of 19 V.I.C. § 1404, the violation of which the defendant is charged, are valid and are in force and effect in this jurisdiction.