## Commonwealth *v.* Unkrich, Appellant.

592

Argued November 14, 1940.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, PARKER, RHODES and HIRT, JJ.

*W. Bradley Ward,* with him *Lemuel B. Schofield* and *Richard Hay Woolsey,* for appellant.

*Raymond A. Speiser,* Assistant District Attorney, with him *Charles F. Kelley,* District Attorney, for appellee.

OPINION BY BALDRIGE, J., December 18, 1940:

Glenn Unkrich, the appellant herein, was indicted in the Court of Quarter Sessions of Philadelphia County at the December Sessions 1939, on twenty-four bills of indictment, which involved stolen automobiles.

In bills Nos. 541 to 552 inclusive, the defendant was charged with receiving stolen automobiles. He was acquitted on all these bills. Two bills, Nos. 553 and 554,

charged him with possessing an automobile upon which a certain manufacturer's engine number had been omitted, obliterated, and defaced. The defendant was convicted on these two bills. The remaining bills, numbered 555 to 564 inclusive, each related to a different automobile and contained two counts; the first covered the possession of an automobile with the manufacturer's serial number and engine number omitted, obliterated and defaced; and the second charged the defendant with selling the automobiles in question, knowing that the engine number and manufacturer's serial number had been destroyed, etc. The defendant was found guilty on both counts of each of those ten bills. The court imposed an aggregate sentence of eight months on the first count of bill No. 556, charging possession of an automobile, etc., and the second count in bills Nos. 555, 557, and 558, charging sale of an automobile, etc., and suspended the sentence of the remaining bills. This appeal followed.

There is little, if any, controversy over the facts, which may be stated in substance as follows. The defendant is a dealer in used automobiles, trading under the name of "State Auto Credit Company" and has been for some years in that business at 2409 N. Broad Street, Philadelphia. During a period beginning in October of 1938 and ending in September 1939, the defendant purchased at various times from a man named Ryan, 12 used automobiles for amounts which apparently were not below the market prices. At the times the cars were purchased they had been stolen but a short time prior thereto by someone whose identity was not proven. When defendant was arrested October 1939, he had sold ten of these cars and two of them remained in his possession.

In accordance with a practice of the two companies which manufactured the cars that were stolen, each car is assigned two numbers when it leaves the factory. One, an engine number, is stenciled into the metal on

the side of the motor, and the other, the manufacturer's serial number, is on a metal tab on the door frame and is visible when the door is open. There is also a number, corresponding with the serial number appearing on the door frame, cut into the metal frame underneath the right rear mudguard of the car. This number on an obscure part of the car is not disclosed to the automobile trade, only the police are informed thereof to aid them in detection of theft. This so-called secret number had been defaced on each of the twelve cars involved in this case, but it is so impressed in the metal that if obliterated or defaced by some abrasive process, it can usually be brought out by means of an acid bath, which process was successfully used in these cars after the police had seized them. Then it was ascertained that in each car the secret number did not correspond with the manufacturer's serial number appearing on the frame of the front door.

A further investigation showed that each of these cars bore an engine number and manufacturer's serial number different from the numbers originally assigned to the car by the manufacturer. This change had been effected by someone by means of substituting different engine and serial numbers for the originals. The number on the engine block and manufacturer's serial number on the door had not been defaced or obliterated, and corresponded exactly with the numbers set forth on the certificate of title delivered to the defendant by Ryan at the time of each purchase. It was stated that what probably happened was that after each car was stolen the thief acquired a wrecked car of a similar make and model from a junk dealer for which he would receive a valid title certificate. He then removed the original motor and also the manufacturer's serial number on the stolen car and substituted therefor the engine and manufacturer's serial number of the car he purchased. Thus, he would have a salable automobile with an ostensibly valid title certificate bearing numbers

corresponding with the numbers then on the stolen car. There was no evidence that the defendant stole the cars, nor was there direct proof that he defaced the numbers, nor that Ryan was the thief or knew the cars were stolen, or that he had defaced the secret numbers or knew thereof.

The indictments were drawn under sections 301 and 306 of the Motor Vehicle Code of May 1, 1929, P. L. 905, Art. III, amended by the Act of June 29, 1937, P. L. 2329, §1, 75 PS §§61-66. The former provides that "it shall be unlawful to have possession of ...... a motor vehicle ...... on which the manufacturer's serial number or engine number has been omitted, obliterated, or defaced" and that a person violating this provision shall be guilty of a misdemeanor. The pertinent section of 306 reads as follows: "Any person selling ...... a motor vehicle ...... on which the engine number or manufacturer's serial number has been destroyed, removed, covered, altered, or defaced, with knowledge of said destruction, removal, covering, alteration, or defacement of said engine number or manufacturer's serial number, shall be guilty of a felony ......"

While some of the circumstances attending this case are of a suspicious nature and were sufficient to support the charge of receiving stolen goods, we are all of the opinion that the facts do not justify a conviction on the indictments now before us. Otherwise, any person who buys a car, receives what seems to be a perfectly good title certificate, in which the number corresponds with the undefaced serial number and engine number, and pays the market price therefor, may be arrested, tried, and convicted because perchance a secret number hidden somewhere in the car, where the average person would not think of looking, has been obliterated without the owner's knowledge. If the Commonwealth's theory is correct it would be a wise precaution for every owner of a car to search in the innermost parts of not only the body but the chassis of his

car to see if some well concealed number has been defaced. In each of the foregoing sections of the statute of 1929, supra, the word "the" not "any" is used before the words "manufacturer's serial number and engine number", which implies just what the public generally believe, viz., that an automobile bears only one serial number and one engine number. The numbers the law makers had in mind were no doubt those that prominently appear on the engine and doorjam of an automobile, which are invariably and universally used by those engaged in the automobile business and by motor vehicle bureaus. The penal statute before us should be interpreted in the light of its ordinary meaning and common understanding.

The learned trial judge below charged the jury that in order to convict the defendant of possession of a car on which the manufacturer's serial number was defaced, it was not necessary for the Commonwealth to prove knowledge of the defacement on the part of the defendant. Possession of such a car was all that was necessary to establish guilt. We are unable to agree with that construction of the statute before us.

Ordinarily intent is a necessary ingredient of a criminal offense, although there are well recognized exceptions to this rule. The legislature may enact a criminal statute that irrespective of the intent of the doer of an act, the purity of the motive by which it was prompted, knowledge or ignorance of the criminal character of the act may be immaterial circumstances in passing upon the question of the guilt of the accused. Acts relating to the violation of our liquor and food laws come within that category as is clearly pointed out by our President Judge KELLER in *Commonwealth v. Liberty Products Company*, 84 Pa. Superior Ct. 473. People dealing in or handling liquor or food, especially liquor, do so at their peril. They must exercise a certain measure of diligence in the protection of the public interest: *Commonwealth v. McGuire*, 88 Pa. Superior Ct. 155;

*People v. Roby,* (Mich.) 18 N. W. 365. The statutes under which prosecutions of that nature arise come under police regulations and have for their purpose the improvement of social and moral conditions, the protection of health, etc. The provisions of the statute upon which these indictments are based have an entirely different purpose and do not come within the term of police regulations.

"Whatever may be the true construction of the statute, when, with a knowledge of all the facts, one deliberately violates a positive law which he is presumed to know, he cannot be excused on the ground that he intended no wrong. But the rule applies only to unlawful acts which are voluntarily, and in that sense intentionally, done." 16 C. J. §42, p. 77.

In *Commonwealth v. Schambers,* 105 Pa. Superior Ct. 467, 471, 161 A. 624, where the defendant was charged with violating the liquor laws, this court speaking through Judge PARKER said: "The rule of quite general application that criminal intent forms no part of acts mala prohibita is founded on necessity but is not broad enough to authorize the legislature to eliminate the element of intent in defining crimes where it makes criminal an act which the utmost care and circumspection would not enable one to avoid ...... This rule of necessity is to be applied with reason ...... On the other hand, cases arise where there is not only an absence of necessity for the rule, but to enforce it would promote injustice ...... 'Where a statute punishes the doing under particular circumstances of an act which in the absence of such circumstances is lawful, one who does the act under bona fide and non-negligent ignorance or mistake as to the existence of such circumstances is not guilty, unless it appears that the legislature intended that persons doing the act should act at their peril': 16 C. J. 86. Consequently in a given case involving this question we are not limited to a determination of whether there was knowl-

edge upon the part of the defendant, but also must inquire as to whether it was through his negligence or fault that he did not have knowledge."

The law does not impose an absolute duty on a possessor or operator of a car to make a thorough inspection of it to ascertain the condition of a hidden serial number. Doubtless, the legislature did not contemplate a practice, which now seems to exist to some extent at least, of stamping a number in an ' obscure part of an automobile. The non-negligent ignorance of the defendant does not constitute an element in this criminal offense. There was undisputed testimony that when the appellant bought these cars from Ryan he compared the numbers on the door and engine with those appearing in the title certificates, and they corresponded. There was no proof that he failed to do what the ordinary prudent man would have done in the same circumstances. It is no offense, nor is it detrimental in any way to the public, for a person to be the purchaser or borrower of an automobile with a defaced secret number of which he has no knowledge.

Before one can be convicted of a crime his case must plainly and unmistakably come within the provisions of the statute. "A statute that either forbids or requires the doing of an act in terms so vague that men of common intelligence must guess as to its meaning and differ as to its application lacks the first essential of due process of law." 14 Am. Jur., Criminal Law, §19. We are not unmindful that the act providing that the possession of a car with the engine number omitted, obliterated, or defaced, does not expressly state that the possession shall be with knowledge thereof, while the section which makes it a felony to sell a motor vehicle with an altered or defaced engine or manufacturer's serial number, stipulates that it must be sold with the knowledge of the defacement. But, as admittedly the substituted serial number and engine number, which were located where such numbers are known

by the public to be placed, had not been tampered with, we think the Commonwealth's evidence that the secret serial number was defaced, without proof that appellant had knowledge thereof, was not sufficient to warrant a conviction on either the charge of possession or of a sale of an automobile with a defaced serial number.

Judgment reversed and defendant discharged.