Commonwealth *v.* Bready, Appellant.

Argued September 15, 1971. Before WRIGHT, P. J., WATKINS, MONTGOMERY, JACOBS, HOFFMAN, SPAULDING, and CERCONE, JJ.

*Anthony J. Giangiulio,* with him *Frederick W. Mc-Brien, III,* and *Bean, DeAngelis, Kaufman & Giangiulio,* for appellant.

*William T. Nicholas,* First Assistant District Attorney, with him *Stewart J. Greenleaf,* Assistant District Attorney, and *Milton O. Moss,* District Attorney, for Commonwealth, appellee.

OPINION BY HOFFMAN, J., December 13, 1971:

This is an appeal from the conviction of a District Justice of the Peace for violating Section 1301 of The Vehicle Code[1] by failing to report all fines and penalties to the Pennsylvania Department of Revenue.

At the conclusion of appellant's trial, appellant submitted points for charge which, in essence, would have instructed the jury that the Commonwealth had to prove beyond a reasonable doubt that appellant acted wilfully, intentionally, or out of a corrupt motive. The

[1] Act of April 29, 1959, P. L. 58, §1301, 75 P.S. §1301.

lower court refused to charge as requested, charging the jury as follows: "Members of the jury, the statute, the way it is drawn, admits of no exceptions. The statute says, and I will read it again: 'Sworn statements of all fines and penalties collected, and all bail forfeited shall be made by the Magistrate or other Officer imposing or receiving the same upon forms'—and so forth.

"In other words, it's not a question of whether or not it was a mistake or an inadvertence, but whether or not the fines were all reported. As Mr. Giangiulio [appellant's trial counsel] says, it demands perfection, and indeed it does. Now, it is for you to determine the guilt or innocence of this defendant. Did he or did he not violate the terms and provisions of this section of the Vehicle Code."

Appellant contends that scienter or criminal intent is an essential element of the crime for which he was convicted, and that the lower court therefore erred in not so charging the jury. Section 1301 of The Vehicle Code, however, does not make any reference to intention or wilfullness. Noting this omission, the Commonwealth argues that the Legislature intended the statute to operate as a police regulation which would not require *mens rea* to sustain a conviction.

The question of whether criminal intent is an essential element of a statutory offense is a matter of statutory construction. *Commonwealth v. Weiss,* 139 Pa. 247, 21 A. 10 (1891). Whether or not a given statute is to be construed as requiring mens rea "is to be determined by the court by considering the subject matter of the prohibition as well as the language of the statute, and thus ascertaining the intention of the legislature." *Commonwealth v. Schambers,* 105 Pa. Superior Ct. 467, 471, 161 A. 624 (1932), quoting 16 C.J. 85.

In *Commonwealth v. Koczwara*, 397 Pa. 575, 155 A. 2d 825 (1959), our Supreme Court considered the subject matter of statutes which do not require proof of criminal intent: "In recent decades . . . many states have enacted detailed regulatory provisions in fields which are essentially non-criminal, e.g., pure food and drug acts, speeding ordinances, building regulations, and child labor, minimum wage and maximum hour legislation. Such statutes are generally enforceable by light penalties, and although violations are labelled crimes, the considerations applicable to them are totally different from those applicable to true crimes, which involve moral delinquency and which are punishable by imprisonment or another serious penalty. Such so-called statutory crimes are in reality an attempt to utilize the machinery of criminal administration as an enforcing arm for social regulations of a purely civil nature, with the punishment totally unrelated to questions of moral wrongdoing or guilt. It is here that the social interest in the general well-being and security of the populace has been held to outweigh the individual interest of the particular defendant. The penalty is imposed despite the defendant's lack of a criminal intent or mens rea."[2] *Commonwealth v. Koczwara*, supra at 580.

---

[2] In *Commonwealth v. Yaple*, 217 Pa. Superior Ct. 232, 273 A. 2d 346 (1970), we held that knowledge of the narcotic content of drugs possessed by the appellant was not an essential element of the offense. This holding was based on the stated legislative purpose of protecting "the public health by regulating the possession, control, dealing in, giving away, delivery, dispensing, administering, prescribing, and use of certain drugs, . . . ." Our opinion only dealt with the necessity of proving that the appellant had specific criminal knowledge of the *narcotic content*. It did not hold that the trial court could refuse to charge the jury on criminal intent where a defendant raised the defense that he was not aware that any tangible item was in his possession. Such a refusal by the trial court would be error under *Commonwealth v. Schambers*, 105 Pa. Superior Ct. 467, 161 A. 624 (1932).

In the instant case, the crime for which the appellant was convicted does not "come under police regulations [which] have for their purpose the improvement of social and moral conditions, the protection of health, etc." *Commonwealth v. Unkrich,* 142 Pa. Superior Ct. 591, 597, 16 A. 2d 737 (1940); see *Clem's Cafe Liquor License Case,* 425 Pa. 94, 99, 227 A. 2d 491 (1967). Therefore, since the "subject matter of the prohibition" does not indicate a legislative intent to dispense with the element of *mens rea,* we must turn to "the language of the statute" in order to determine that intent. The statute does not literally require a showing of guilty knowledge, but this is not dispositive.[3]

Section 1301 of The Vehicle Code provides in relevant part as follows: "Penalty.—Any magistrate or other officer, who shall fail to make such monthly reports and returns, or either of them, shall be guilty of a misdemeanor in office, and upon conviction thereof in a court of quarter sessions, shall be sentenced to pay a fine of five hundred dollars ($500.00) and costs of prosecution, or undergo imprisonment for not more than sixty (60) days, or suffer both such fine and im-

---

[3] The Commonwealth argues that Section 1301 should be compared with 42 P.S. 735.1 requiring magistrates to pay over to the Commonwealth fines when due. 42 P.S. 735.1 provides that any magistrate "who shall wilfully fail to pay over any money due . . . shall be guilty of a misdemeanor, and of misbehavior in office . . . ." This is said to indicate a legislative intent in 75 P.S. 1301 to punish for mere failure, without wilfullness, to file the report. However, in *Commonwealth v. Unkrich,* 142 Pa. Superior Ct. 591, 16 A. 2d 737 (1940), our Court held that where The Vehicle Code did not expressly state that possession of a car with a defaced engine number required guilty knowledge, and where another section, making it a felony to sell a car with a defaced number, stipulated that it must be sold with knowledge, the proof of knowledge was still a prerequisite to conviction for possession or sale of such a car.

prisonment." Act of April 29, 1959, P. L. 58, §1301, 75 P.S. 1301.

It is apparent from the above that the Legislature did not intend Section 1301 to operate as a police regulation, punishable without proof of guilty knowledge. Appellant introduced evidence at trial which indicated that he was one of the busiest Justices of the Peace in the Commonwealth, and that he had part-time secretarial help responsible for his bookkeeping and clerical chores. It would be unconscionably harsh to subject any public officer to $500.00 fine, 60 days imprisonment, and removal from office, where a failure to report was the product of mistake or inadvertence.[4]

If a legislature were to intend that a traditional crime could be proved without evidence of guilty knowledge, it would have to express that intent clearly. In *Morissette v. United States*, 342 U.S. 246 (1952), the defendant had been convicted of converting government property in violation of 18 U.S.C. §641. The trial court ruled that the offense charged required no element of criminal intent. This ruling was upheld by the Court of Appeals, which concluded that the failure of Congress to express such a requisite effectively excluded intent as an essential element of the crime. The Supreme Court reversed: ". . . exhaustive studies of state court cases [do not] disclose any well-considered decisions applying the doctrine of crime without intent to . . . enacted common-law offenses, although a few deviations are notable as illustrative of the danger inherent in the Government's contentions here.

---

[4] It should also be noted that appellant cannot be held vicariously liable for the intentional or inadvertent acts of his employees: "It would be unthinkable to impose vicarious criminal responsibility in cases involving true crimes . . . . Liability for all true crimes, wherein an offense carries with it a jail sentence, must be based exclusively upon personal causation." *Commonwealth v. Koczwara*, supra at 585.

"The Government asks us by a feat of construction radically to change the weights and balances in the scales of justice. The purpose and obvious effect of doing away with the requirement of a guilty intent is to ease the prosecution's path to conviction, to strip the defendant of such benefit as he derived at common law from innocence of evil purpose, and to circumscribe the freedom heretofore allowed juries. Such a manifest impairment of the immunities of the individual should not be extended to common-law crimes on judicial initiative." *Morissette v. United States*, supra at 262-263.

The Legislature has described the crime for which the appellant was convicted as a "misdemeanor in office."[5] Misconduct, misbehavior, or misdemeanor in office was a common-law offense. Our Court, in *Commonwealth v. Brown*, 116 Pa. Superior Ct. 1, 175 A. 748 (1934), approved the following charge to the jury: " '[m]isconduct or misdemeanor in office, in its penal sense, is any act or omission in breach of a duty of public concern by one who has accepted public office, *provided his act is wilful and corrupt and is not judicial.*' " (emphasis added). If the Legislature "borrows terms of art in which are accumulated the legal tradition and meaning of centuries of practice, it presumably knows and adopts the cluster of ideas that were attached to each borrowed word in the body of learning from which it was taken and the meaning its use will convey to the judicial mind unless otherwise instructed. In such case, absence of contrary direction may be taken as satisfaction with widely accepted definitions, not as a departure from them." *Morissette v. United States*, supra at 263.

---

[5] "Any magistrate or other officer, who shall fail to make such monthly reports and returns, or either of them, shall be guilty of a misdemeanor in office . . . ." Act of April 29, 1959, P. L. 58, §1301, 75 P.S. 1301.

The Legislature, therefore, has not, by its omission of any reference to guilty knowledge, indicated any intention to eliminate *mens rea* as an element of the crime here charged.

The judgment of the lower court is vacated and the case is remanded for a new trial.

JACOBS, J., dissents.