Edward Gannon, Appellant, *v.* Upper Merion Township, Appellee.

Argued April 4, 1974, before Judges CRUMLISH, JR., MENCER and ROGERS, sitting as a panel of three. Reargued December 2, 1974, before President Judge BOWMAN and Judges CRUMLISH, JR., KRAMER, WILKINSON, JR., ROGERS and BLATT. Judge MENCER did not participate in the reargument.

*E. William Heuser,* for appellant.

*Gregory J. Dean,* for appellee.

OPINION BY JUDGE CRUMLISH, JR., January 7, 1975

This is the case of the Capering Canine and requires our construction of an ordinance which was enacted to prohibit such offensive conduct.

The Court of Common Pleas of Montgomery County (Criminal Division) sustained the conviction of Edward Gannon who was accused of violating the "Dog Ordinance" of Upper Merion Township.

On February 7, 1973, the animal control officer of Upper Merion Township (Appellee) spotted a dog, a pet of the Edward Gannon family.[1] He successfully pursued the dog to the Gannon home and upon arriving where the animal was in residence, admonished Mrs. Gannon that the beast had been frolicking vigorously "at large." The officer, recognizing what he obviously considered to be his mandate as a law enforcement officer, later in the day filed a criminal complaint supported by an appropriate affidavit against Edward Gannon, master of the household, and owner of the personal property, equivalent of entireties in real property law, charging him with violation of Upper Merion Township Ordinance No. 67-201,

---

1. As will be noted later, the dog was "owned" by Appellant and his wife.

alleging that he permitted his dog to run "at large."[2] This exercise in diligence and fidelity to duty by the officer reminds us of the celebrated case of *The People of the City of New York on complaint of Officer Harry Moran v. William C. Fields* (better known to us as W. C. Fields), Defendant, heard in the City Magistrate's Court of the City of New York Borough of Manhattan: Seventh District, on September 14, 1928. On February 26, 1973, Gannon, in absentia, was found guilty as charged by the District Justice of the Peace. When he failed to pay the fine and costs, grave consequences ensued. In full compliance with the procedural prescription of the law, a warrant for his arrest was issued, and subsequently he was incarcerated.

He appealed to the Court of Common Pleas of Montgomery County and on May 9, 1973, after a complete evidentiary rerun, he again was found guilty. We are now called upon to determine the propriety of that ruling.

The "Dog Ordinance of Upper Merion" No. 67-201 provides in relevant part:

"Section 2. Definitions

1. Dog Owner. Any person, firm or corporation, who or which owns, possesses, maintains, houses or keeps any dog or dogs within Upper Merion Township, whether for compensation or otherwise.

Section 4. Running at Large

It shall be unlawful for the dog owner of any dog to permit such dog to run at large within Upper Merion Township."

Appellant contends that the court below erred when it imputed vicarious criminal liability for the grave criminal acts of his wife and family to him because they were custodians of the dog while he was at work during the time when their dog was under surveillance by the

---

2. The record fails to disclose the size, species or vicious proclivities of the accused animal, and since it is immaterial to the disposition of the legal issue involved, it will be ignored.

local constabulary.[3] Appellee attacks this position and urges us to agree that since Appellant is a "dog owner" within the clear definition of the ordinance and since his dog was, in fact, running at large, he is a guilty man regardless of whether he intended to defy the ordinance, or for that matter even knew of its existence.[4]

Whether criminal intent or guilty knowledge is a necessary ingredient of a statutory offense is a matter of construction, to be determined from the language of the statute in light of its manifest purpose and design. *Commonwealth v. Gorodetsky*, 178 Pa. Superior Ct. 467, 115 A. 2d 760 (1955).; *Commonwealth v. Jackson*, 146 Pa. Superior Ct. 328, 22 A. 2d 299 (1941). In addition, it is for the Legislature (here the Township) to determine whether the public injury is such and so great as to justify an absolute and indiscriminate prohibition. *Commonwealth v. Weiss*, 139 Pa. 247, 21 A. 10 (1891).

The important language in the ordinance for the purpose of this inquiry is the phrase "to permit". The lower court cited the definition of "permit" in Black's Law Dictionary (Revised 4th Ed. 1968) which reads:

"To suffer, allow, consent, let; to give leave or license; *to acquiesce by failure to prevent,* or to expressly assent or agree to the doing of an act." (Emphasis supplied.)

The court below then determined that the term "permit" within the context of the Dog Ordinance encom-

---

3. The trial judge ruled that the testimony which put Appellant at work on February 7 was irrelevant and he excluded it from consideration. We do not agree that the testimony is irrelevant and we find that it was improperly excluded.

4. There is nothing in the record to indicate whether this zealous animal control officer ever exercised ordinary prudence and common sense by advising Gannon that a loose dog in the serene environs of Upper Merion Township, when apprehended might bring such horrendous consequences as this otherwise law abiding citizen ultimately was called up to face.

passed "the situation in which the owner of a dog is aware that the dog may run at large other than by force beyond his control and acquiescence in that situation".

While we agree that the ordinance does not require an *actual* intent to disobey its provisions and agree that the case at bar as related by the court could be a violation of the ordinance, there is nothing in the record to support the conclusion that Appellant acquiesced in any of the events which led to the animal's sucessful flight to freedom or as is termed in the ordinance to "run at large."[5]

In demonstrating acquiescence of Appellant the court below in reviewing the evidence found that Appellant's postman "had seen the dog at large 'about 100 times'". This is simply not his testimony. He merely said that he had "seen him about one hundred times" in the course of his daily deliveries. There is no testimony to support the conclusion that the animal had been "at large" a number of times. Even were it to be so, it is immaterial since the ordinance does not require or even consider the animal's recidivism.

The court below emphasized the testimony of Appellant's wife who said that her youngest child has a habit of occasionally opening the door and allowing the dog to take leave of the house.[6] Knowledge of the child's habit was then passed on by the court below from Appellant's wife to the Appellant. Indeed it is an extra-

---

5. Courts of other jurisdictions have held that ordinances similar to the one in question here require a showing that the dog was at large with the knowledge or permission of the owner. *Santanello v. Copper*, 106 Arizona 262, 475 P. 2d 246 (1970); *Decker v. McSorley*, 111 Wis. 91, 86 NW 554 (1901).

6. The complete testimony reveals that after the dog leaves the house in this manner, "her son runs right out after him," in a futile attempt to match in speed and agility the eagerness of one who was not born free.

ordinary chain, beginning with opening the door and ending with the culpability of Appellant. This imputation is fallacious and has no legal foundation. Appellant's wife is a "dog owner" under the terms of the ordinance as well, and it was *she* and *not Appellant* who knew of the dog's propensities and her child's natural pet playfulness at the time in question. We realize that a roaming, unattended canine chorus can be a serious nuisance in our suburban or for that matter urban communities, and we do not deny that dog owners must exercise some degree of care to ensure that their animals do not disturb the neighborhood. However, we fail to see how deterrence of such carelessness is in any way furthered by imposing criminal liability on a person who is in no position to control the dog.

We have carefully analyzed the cases cited by Appellee and find them not only inapplicable, since they involve statutory crimes requiring no mens rea, guilty knowledge or acquiescence, but really are authority for the proposition that potential liability of Appellant's wife cannot be imputed absolutely to Appellant, as was done here.

More important than what some readers might consider to be a facetious disposition of the legal issue in finding that the officer barked up the wrong tree is the outrageous imposition on the administration of justice, is the waste of the time of valuable manpower at all phases of the litigation and talent that must, of necessity, contribute to the delay of justice and its denial, to say nothing of the unjustified cost to the already overtaxed citizens, when good judgment at the first level of law enforcement should have prevailed.

Order reversed.

JUDGE MENCER, a member of the panel having heard original argument in this appeal but who did not participate in reargument before the Court en banc, joins in the opinion of JUDGE CRUMLISH.

PRESIDENT JUDGE BOWMAN dissents.

DISSENTING OPINION BY JUDGE BLATT

I must respectfully dissent.

Restrictive dog ordinances are clearly within the municipal police power and are promulgated to protect the public from personal injury, property damages and other hazards created by roving dogs. It is well understood and recognized that statutes and ordinances, such as the Dog Ordinance of Upper Merion Township,[1]

> ". . . are in the nature of police regulations, . . . [and] impose criminal penalties, irrespective of any intent to violate them, the purpose being to require a degree of diligence for the protection of the public which shall render violation impossible." (Citations omitted.) *Clem's Cafe Liquor License Case,* 425 Pa. 94, 99, 227 A.2d 491, 493 (1967).

Of course, "[w]hether criminal intent or guilty knowledge is a necessary ingredient of a statutory offense is a matter of construction, to be determined from the language of statute [here the ordinance] in the light of its manifest purpose and design." (Citations omitted.) *Commonwealth v. Morakis,* 208 Pa. Superior Ct. 180, 184, 220 A.2d 900, 903 (1966).

As I read the Dog Ordinance of Upper Merion Township in its entirety, I see a clearly manifested purpose and design to prohibit dogs from running freely within the Township at any time and under any circumstances.

The ordinance begins as "An ordinance prohibiting the running at large of dogs . . ." Section 3 provides that the owner of every dog *shall keep such dog at all times* (a) confined *so it cannot escape,* or (b) firmly secured by chain or leash, or (c) under the reasonable control of some person. Sections 4 and 5 provide respectively that it shall be unlawful for the owner *to permit* the dog to run at large, or to attack a human being.

The appellant here is accused of violating Section 4 in permitting his dog to run at large. The majority con-

---

1. Upper Merion Township Ordinance No. 67-201.

strues that section so as to impose liability upon an owner only where that owner is at least guilty of passive negligence in failing to prevent the escape of his dog. In light of the clear intent of the ordinance read as a whole, however, I believe this construction to be incorrect. Concepts of negligence are in no way expressed in this ordinance, and it seems to me that we have no right to introduce them.

Just as in those cases where the holders of liquor licenses have been held absolutely liable for permitting prohibited conduct upon the licensed premises notwithstanding the fact that they were unaware such conduct was taking place, *see Clem's Cafe Liquor License Case, supra; Commonwealth v. Koczwara,* 397 Pa. 575, 155 A.2d 825 (1959) ; *Sobel Liquor License Case,* 211 Pa. Superior Ct. 129, 235 A.2d 623 (1967) ; *Glass Door Liquor License Case,* 193 Pa. Superior Ct. 416, 165 A.2d 139 (1960), so, too, under this ordinance a dog owner should be held absolutely liable whenever his dog is found at large on the street. Inasmuch as the intent of the statute is clear, the public is entitled to the complete application of its protective provisions.

I believe, therefore, that the lower court should be affirmed.

Judge Wilkinson joins in this dissent.