## Commonwealth v. Ewing

*Frederick F. Coffroth, District Attorney,* for Commonwealth.

*Joseph B. Policicchio,* of *Ogle, Metz & Policicchio,* for defendant.

COFFROTH, *P.J.,* January 2, 1979—This case is here on defendant's appeal from his summary conviction for violations of The Game Law of June 3, 1937, P.L. 1225, secs. 316(i), 701, as amended, 34 P.S. §1311.316(i), 1311.701.

Section 316(i) provides as follows: "It is unlawful for any person: . . . (i) After being denied the right to hunt or trap by action of the commission or a court,

to hunt or trap anywhere within the Commonwealth during the period such right has been denied, with or without a hunter's license."

Section 701 provides in relevant part: "Except as otherwise provided in this act, it is unlawful for any person to take or kill or wound or attempt to take or kill or wound, or assist in the taking, killing or wounding of any game, except during the open season, or to have in possession, either living or dead, any game, or any part thereof, except game lawfully taken during the open season, which may be had in possession up to and including July first of the year immediately following." [There is no applicable exception "otherwise provided in this act."]

In this case, it is conceded that defendant killed a deer in Pennsylvania, that he killed it in season but during a period when his right to hunt in the Commonwealth had been denied, that the deer was killed by defendant while hunting near the Pennsylvania-Maryland state line, and that defendant knew he had no right to hunt in Pennsylvania even though he had a valid Maryland hunting license; defendant contends that he did not realize he was in Pennsylvania, and believed he was in Maryland.

If defendant has violated section 316(i), supra, by unlawful hunting in Pennsylvania, the deer he killed and possessed was "game unlawfully taken" under section 701.

Assuming for the moment that defendant believed he was in Maryland but was in Pennsylvania by innocent mistake, the question arises whether he can be guilty of the offenses charged. It is obvious from reading sections 316(i) and 701 that there is no language in either of them which requires that

the accused be *knowingly, wilfully or intentionally* in the state at the time, but defendant contends that we should read those sections as if such words were included and thus allow to him the defense of mistake as to his whereabouts. We cannot agree with that argument. As we see it, knowing what state he is hunting in is the absolute obligation of the hunter which he violates at his peril, just as the operator of a vehicle is bound by the vehicle laws of the state he is in regardless of what state he thinks he is in and regardless of whether he has made an innocent error in that regard.

The legislature may make an act criminal without regard to the intent or knowledge of the doer: Com. v. Black, 251 Pa. Superior Ct. 539, 380 A. 2d 911 (1977). Whether the legislature has done that in a given case depends on what the particular statute says. If the statute states that violation must be knowingly or wilfully committed, or contains language to that effect, then the Commonwealth must prove such guilty knowledge in order to convict. Where, however, the statute is silent about such guilty knowledge, the statute must be read as a whole to see whether the legislature may have by implication intended to require proof of guilty knowledge even though it did not expressly say so. Thus, the issue is one of statutory interpretation: 22 C.J.S. 100, §30; 10 P.L.E. §22, 356.

As a general rule, where the statute is silent about guilty knowledge, proof of such knowledge will be required if the offense is one involving moral turpitude (malum in se); but if the offense is not in itself evil but is created in aid of a regulatory police enactment (malum prohibitum), criminal liability is absolute irrespective of guilty knowledge or intent: Clem's Cafe Liquor License Case, 425 Pa. 94,

227 A. 2d 491 (1967); Com. v. Williams, 49 D. & C. 2d 161 (1969).[1] The best known example of such regulatory enactments is the Vehicle Code of June 17, 1976, P.L. 162, 75 Pa. C.S.A. §101 et seq.; see Com. v. Trice, 26 Somerset 260 (1970), citing Com. v. Unger, 190 Pa. Superior Ct. 43, 45, 151 A. 2d 782 (1959). Thus, in Com. v. Winkler, 11 Centre 589 (1975), the court held that criminal intent or knowledge is not an essential element of the offense of driving under the influence. See also Com. v. Roth, 60 Lanc. 133 (1966), driving under the influence. Similar regulatory statutes are held to impose absolute criminal liability for violation in the absence of language therein to the contrary. See: Com. v. Jackson, 146 Pa. Superior Ct. 328, 22 A. 2d 299 (1941), affirmed 345 Pa. 456, 28 A. 2d 894 (1942); Milk Control Law of April 28, 1937, P.L. 417, as amended, 31 P.S. §700j-102 et seq.; Com. v. Penn Central, 98 Dauph. 120 (1976), and Com. v. Ebersole, 59 Lanc. 363 (1965), cited with approval in Com. v. Barnes & Tucker Co., 455 Pa. 392, 419 319 A. 2d 871 (1974); Clean Streams Law of June 22, 1937, P.L. 1987, as amended, 35 P.S. §691.901; Clem's Cafe Liquor License Case, supra; Com. v. Koczwara, 397 Pa. 575, 155 A. 2d 825 (1959); and Com. v. Jade East, 237 Pa. Superior Ct. 140, 346 A. 2d 562 (1975); Liquor Code of April 12, 1951, P.L. 90, as amended, 47 P.S. §1-101 et seq.; Com. v. Fine, 166 Pa. Superior Ct. 109, 70 A. 2d 677 (1950); Pennsylvania Election Code of June 3, 1937, P.L.

---

1. "Malum in se. Literally 'a wrong in itself.' An act involving illegality from the very nature of the transaction, on principles of natural, moral and public law. Otherwise called 'malum per se.' Malum prohibitum. An act which is wrong only because made so by statute." 54 C.J.S., Mala, 909.

1333, as amended, 25 P.S. §2601 et seq.; Gannon v. Upper Merion Twp., 16 Pa. Commonwealth Ct. 630 (1975), dog ordinance; Com. v. Baker, 29 Somerset 261, 267, 71 D. & C. 2d 521, 528, 66 Mun. 109 (1974); Pennsylvania Sewage Facilities Act of January 24, 1966, P.L. (1965) 1535, 35 P.S. §750.1 et seq.; Com. v. Williams, supra, interference with fire fighting; compare Com. v. Hackney, 117 Pa. Superior Ct. 519, 178 Atl. 417 (1935), embezzlement.

The basic reason for permitting enactment and enforcement of an absolute criminal liability, irrespective of the defendant's knowledge or wrongful intent (so long, of course, as his conduct is volitional and is in that sense voluntary or intentional), is the strong public interest in regulation of the activity which overshadows and overrides the normal focus of the criminal law upon the degree of culpability of the actor's conduct. Thus, the public interest in such regulatory systems is such as to support the imposition of sanctions, criminal and civil, for violation even in the absence of wrongful intent, negligence, foreseeability or other such subjective criteria of fault. See Com. v. Barnes and Tucker, supra, 414. As the court stated in Com. v. Koczwara, supra, 580:

"In recent decades, however, many states have enacted detailed regulatory provisions in fields which are essentially non-criminal, e.g., pure food and drug acts, speeding ordinances, building regulations, and child labor, minimum wage and maximum hour legislation. Such statutes are generally enforceable by light penalties, and although violations are labelled crimes, the considerations applicable to them are totally different from those

applicable to true crimes, which involve moral delinquency and which are punishable by imprisonment or another serious penalty. Such so-called statutory crimes are in reality an attempt to utilize the machinery of criminal administration as an enforcing arm for social regulations of a purely civil nature, with the punishment totally unrelated to questions of moral wrongdoing or guilt. It is here that the social interest in the general well-being and security of the populace has been held to outweigh the individual interest of the particular defendant. The penalty is imposed despite the defendant's lack of a criminal intent or mens rea."

The Game Law is such a regulatory police enactment and we conclude that the legislature purposefully and validly omitted any requirement of guilty knowledge or intent in its prohibitive sections such as sections 316(i) and 701 here involved. This conclusion is reenforced by the fact that in certain other sections of The Game Law guilty knowledge or intent is expressly required. See, for example, sections 725 ("wantonly"), 807 ("knowingly"), and 808 ("wilfully"): Com. v. Malak, 22 D. & C. 2d 113 (1960). Thus the legislature indicates that when it meant to require proof of guilty knowledge or intent it specifically said so, and that when such language is omitted the omission is intentional: Com. v. Koczwara, supra, 583; Com. v. Fine, supra, 114.

The result is that the right to sell milk to the public, to use the waters and highways of the Commonwealth, to hunt in its forests and fish in its waters, and the like, are privileges rather than vested rights, and are subject to reasonable conditions imposed by the state upon their use. See Com. v.

Trice, supra, 262. Violations in such cases are akin to a public nuisance; see Com. v. Barnes and Tucker, supra, 414, 417. As stated in Com. v. Papsone (Patsone), 44 Pa. Superior Ct. 128, 131 (1910), affirmed 23 Pa. 46, 48-9, 79 Atl. 928 (1911):

"'The right to hunt game is but a privilege given by the legislature, and is not an inherent right in the residents of the state. Wild animals and game of all sorts have from time immemorial been the property of the sovereign, and in Pennsylvania, the property of the state. Its power to regulate and prohibit the hunting and killing of game has always been conceded.'" See and compare: Com. v. Agway, 210 Pa. Superior Ct. 150, 153, 232 A. 2d 69 (1967), action for damages for killing fish; Com. v. Eller, 34 Somerset 241, 244 (1977), and Pennsylvania Game Commission v. Craine, 6 D. & C. 2d 129, 141 (1956), revocations of hunting license.

The conclusions we reach here are consistent with the culpability provisions of the new Crimes Code of December 6, 1972, P.L. 1482, 18 C.P.S.A. §302. Section 302(a) states the general rule that "Except as provided in section 305 of this title . . ., a person is not guilty of an offense unless he acted intentionally, knowingly, recklessly or negligently, as the law may require . . ."

Section 304 provides that "[i]gnorance or mistake as to a matter of fact, for which there is a reasonable explanation or excuse, is a defense if: (1) the ignorance or mistake negatives the intent, knowledge, belief, recklessness, or negligence required to establish a material element of the offense; or (2) the law provides that the state of mind established by such ignorance or mistake constitutes a defense." It is apparent that ignorance or mistake is a defense

only if the law requires one of the specified culpable mental states as an essential element of the crime, and is not a defense where the statute imposes absolute liability irrespective of such mental state; since the sections of the Game Law here involved impose such absolute liability, ignorance or mistake on the part of this defendant is no defense.

Subsection (a) of section 305 of the Crimes Code above referred to in section 301 excepts certain offenses from section 301's general rule in the following circumstances:

"The requirements of culpability prescribed by section 301 of this title . . . and section 302 of this title . . . do not apply to: (1) summary offenses, unless the requirement involved is included in the definition of the offense or the court determines that its application is consistent with effective enforcement of the law defining the offense; or (2) offenses defined by statute other than this title, in so far as a legislative purpose to impose absolute liability for such offenses or with respect to any material element thereof plainly appears."

Both (1) and (2) above apply here; this defendant is charged with summary offenses under sections of the Game Law which do not include within the definition of the offenses any requirement of intent, knowledge, belief, recklessness or negligence, and whether summary or not these offenses as defined in the Game Law plainly impose absolute liability as previously discussed. See Com. v. Jade East, supra.

It should be recognized that while the state has the power to create *absolute criminal liability* irrespective of the subjective culpability or mental state of the actor, it does not have *absolute power* to

do so. This legislative power, as all exercise of the police power, is subject to "constitutional requirements." See Com. v. Koczwara, supra, 584. A police power enactment "must be limited to preservation of public order, safety, health, morals or other vital concern of public welfare; government regulation is impermissible unless it safeguards one of those public interests." University Park Cinemas v. Windber Borough, 28 Somerset 1, 20, 59 D. & C. 2d 726, 746 (1972). The subject matter and purpose of the Game Law are to protect and regulate the state's vital interest in its wild life, and clearly fall within the scope of the police power. The second requirement for a constitutional exercise of police power is that: "Regulation must be reasonable; that is, it must not go further than the circumstances require." Id. 28 Somerset at 20, 59 D. & C. 2d at 746. As stated in Com. v. Barnes and Tucker, supra, 419: "The exercise of the police power is nevertheless restricted by the parameters of reason." Applying police power regulations within reason means by due process of law, that is, within the limits of customary notions of fundamental fairness.

In some situations, the courts have refused to apply penal statutes irrespective of knowledge if it was fundamentally unfair to do so, even though the language of the statute created an absolute liability; in such cases the courts in effect read into the statute the word "knowingly" or "wilfully" or other appropriate modifier. Thus, in Com. v. Unkrich, 142 Pa. Superior Ct. 591, 16 A. 2d 737 (1940), where defendant was charged under The Vehicle Code of May 1, 1929, P.L. 905, as amended, 75 P.S. §§61-66, with possession of a vehicle with a defaced

serial number, and the language of the statute appeared to create absolute liability for possession of such a vehicle even though the possessor had no knowledge of the defacement, the court refused to apply the statute to a defendant whose possession was innocent of the defacement. The court said at 595:

"Otherwise, any person who buys a car, receives what seems to be a perfectly good title certificate, in which the number corresponds with the undefaced serial number and engine number, and pays the market price therefor, may be arrested, tried, and convicted because perchance a secret number hidden somewhere in the car, where the average person would not think of looking, has been obliterated without the owner's knowledge. If the Commonwealth's theory is correct it would be a wise precaution for every owner of a car to search in the innermost parts of not only the body but the chassis of his car to see if some well concealed number has been defaced . . . The numbers the law makers had in mind were no doubt those that prominently appear on the engine and doorjam of an automobile, which are invariably and universally used by those engaged in the automobile business and by motor vehicle bureaus."

The court considered that an unreasonable and unfair requirement upon the possessor and interpreted the statute as meaning that defendant must *knowingly* possess a vehicle with a defaced serial number. In Com. v. White, _____ Pa. Superior _____, 393 A. 2d 886 (1978), a similar result was reached where a truck driver employe was prosecuted for possession of a semitrailer from which the serial

number plate in the doorjam was missing, of which he had knowledge, and which he had called to the attention of his employer; under those circumstances, it was unfair to hold him criminally liable, even though he knew of the absence of the number, because he had no wrongful intent to violate the law and had acted reasonably.

Similarly, in Com. v. Brougher, 26 Somerset 169 (1970), this court reached a like result in a hit-run case where the driver failed to stop after striking a mail box and had no knowledge or reason to know that he had struck it. There we said at 172: "Although §1027(d) [The Vehicle Code] does not expressly require that the operator has 'knowingly' struck property, common sense dictates that he cannot be expected to stop unless he knew or had reason to know that his vehicle came in close contact with some object, and that is the holding of the cases: [citations omitted]." Accord: Com. v. Wetmore, 69 D. & C. 2d 344 (1974); compare Com. v. Ei, 69 D. & C. 2d 492 (1974), and Com. v. Adams, 4 Misc. (1971).

In Com. v. Koczwara, supra, a different kind of unfairness was found. There defendant, a liquor licensee, was prosecuted for violations of the Liquor Code for permitting unaccompanied minors to frequent his tavern and for selling beer to minors. His defense was that he was not present at the times in question and had no knowledge of the violations. The court decided as follows: (1) the statute making defendant liable regardless of guilty knowledge is a reasonable and valid exercise of the police power in regulating the liquor business and defendant was properly found guilty even though he lacked knowledge of the violations, and (2) the penalty of fine for the violations was reasonable,

but the penalty of imprisonment for unknowing conduct was unreasonable even for a second misdemeanor offense and could not be imposed.

In the present case there is nothing unfair in requiring a hunter to know or to ascertain for sure what state he is in if he wants to know which state's laws will govern him. Although land boundaries are not secret, their precise location in woodland and out-of-the-way areas cannot be precisely determined, as everyone knows; but it is determinable by any hunter with a modicum of common sense whether he faces the risk of crossing it knowingly or unknowingly; since he knows or should know that game laws vary from state to state and that he will inevitably be bound by the laws of the state he is in at the time, it is reasonable to place upon the hunter the *risk* of straying or wandering across an unmarked boundary into a state for which he is unlicensed or in which for some other reason he is not permitted to hunt. Similar reasoning was employed by the court in Koczwara, supra, to sustain absolute criminal liability (for fine) for innocent violation of the liquor laws; there the court said at 581: "It is abundantly clear that the conduct of the liquor business is lawful only to the extent and manner permitted by statute. Individuals who embark on such an enterprise do so with knowledge of considerable peril, since their actions are rigidly circumscribed by the Liquor Code." That is a fair description of the peril or risk that the hunter takes in the woods.

From the foregoing, it follows that the Commonwealth has made out its case against defendant on both offenses charged, and that ignorance or mistake on his part, even though in good faith and reasonable, as to his whereabouts when hunting is

no defense. Moreover, even if there were such defense, we find from the evidence that defendant in fact knew or surely should have known that he was hunting in Pennsylvania. He is a resident of this state, he is acquainted with the area and he knew he was close to the state boundary. He had no right to rely upon unofficial statements to him by others as to his location.

### ORDER

Now, January 2, 1979, we find defendant guilty as charged. For violation of Game Law section 316(i) defendant shall pay the costs of prosecution and a fine of $40, and for violation of Game Law section 701 shall pay the costs of prosecution and a fine of $200, as imposed by the district justice.