461 A.2d 843

**COMMONWEALTH of Pennsylvania**

v.

**Joseph John CECCHINI, Appellant.**

Superior Court of Pennsylvania.

Submitted March 17, 1981.

Filed June 10, 1983.

Bert M. Moldovan, McKeesport, for appellant.

Robert L. Eberhardt, Deputy District Attorney, Pittsburgh, for Commonwealth, appellee.

Before CERCONE, President Judge, and BROSKY and MONTEMURO, JJ.

MONTEMURO, Judge:

This is an appeal from a judgment of sentence entered by the Honorable James F. Clarke in the Court of Common Pleas of Allegheny County. The appellant, Joseph John Cecchini, was tried without a jury and convicted of Fraudulent Dealing in Vehicles with Removed or Falsified Numbers and with Dealing in Vehicles with Removed or Falsified Numbers, both in violation of the Commonwealth Motor Vehicle Code.[1] Sentence was suspended and the appellant was released on probation for three years, ordered to pay costs of prosecution and to make restitution in the sum of Seventy-two hundred sixty ($7,260.00) dollars to Patrick DiPerna. Post-verdict motions for new trial and arrest of judgment were denied.

The charges arose out of a complaint from Patrick DiPerna, a self-employed resident of the City of McKeesport. Mr. DiPerna claimed that in April of 1978 he purchased a 1975 Lincoln Continental 2-door coupe automobile from the appellant. At the time of the purchase, Mr. DiPerna was accompanied by his brother. Mr. DiPerna testified that the agreed sale price was $5,500.00, which Mr. DiPerna was to pay in $200.00 weekly installments after paying $400.00 cash down. Mr. DiPerna said that the appellant had assured him that all "papers" would be taken care of through a friend of the appellant's at the "3 A's." The appellant represented to Mr. DiPerna that the Lincoln automobile was owned by the appellant's wife. The buyer made payments by check made out to "cash" and the appellant called at the buyer's house regularly every Friday to pick up the payment checks. All of the checks bore the appellant's endorsement with the exception of a few which were endorsed by one Chester Cottone and one which the appellant endorsed jointly with Chester Cottone. The total payment made by check was $6,860.00, which when added to the $400.00 cash payment, made a total of $7,260.00. While the original agreed price was for $5,500.00, the appellant said to

1. 75 Pa.C.S.A. § 7103, Act of 1976, June 17, P.L., 162, No. 18, § 1, effective July 1, 1977.

Mr. DiPerna that the difference in the amounts was for "financing the deal."

Mr. DiPerna also testified that the Pennsylvania State Police came to his house with a search warrant, looking for a stolen automobile and seized the Lincoln automobile pursuant to the warrant and had it towed away. Before this happened, Mr. DiPerna said that the appellant had contacted him and instructed him to get rid of the car because it was "hot," and to make a claim for loss under his insurance policy. Mr. DiPerna did not carry out this request.

Mr. DiPerna also testified that several hours after the State Police seized the Lincoln automobile, the appellant telephoned him at home and asked him to meet with him at a garage. The parties met, and during the course of this meeting Mr. DiPerna said that the appellant said to him, "Damm it, I told you to get rid of the car." DiPerna said that he had need of transportation so the appellant made available for him the use of a 1965 Cadillac automobile, but DiPerna said that it was not in fit condition to be on the road and it had to be returned to the appellant. DiPerna also said that he never received a title certificate for the car. The title certificate was exhibited showing an encumbrance of $3,500.00 in favor of the appellant and DiPerna's explanation for that amount as distinguished from the purchase price which he quoted was that the appellant had indicated to him that he had fixed the price at the lower figure in order to "beat the taxes."

DiPerna's brother, Carl, was called to testify and he said he was present with his brother when appellant was paid $400.00 cash down for the Lincoln automobile and heard the appellant say that he would take care of all of the paper work.

The Commonwealth also produced Edward Alvarez, a self-employed mechanic who operates a shop at his home and who said that he had been in business for fifteen years. This witness had two sheets of inspection station reports for the station he operated under No. 2069. From these records the witness indicated that a 1975 Lincoln coupe

bearing Manufacturer's No. FOY81A83524F had been inspected by him May 21, 1977, and his records listed the vehicle owner as "Joseph Cecchini". The witness then went on to say that on November 7, 1977, he inspected a 1975 Lincoln owned by Joseph Cecchini bearing Manufacturer's No. F5981A835298. On cross-examination this witness said that he did not inspect vehicles without personally seeing the owner's card or title.

The Commonwealth then produced Pennsylvania State Police Trooper Louis Redenbaugh, of the Auto Theft Squad, who said that on March 22, 1979 he seized a Lincoln automobile, confiscating it from Mr. DiPerna. The witness said he got a certified copy of the certificate of title for this vehicle from Harrisburg and that he observed the public number and the confidential number on this particular vehicle. He said that the public number was 5Y81A835248 and the confidential number was 5Y81A882270, both of these numbers obviously being different when they should have been the same. The application for this vehicle to be titled in Pennsylvania had been filed by "E. Marrone & Sons" listed as a junk dealer in New Castle, Pennsylvania, and the number listed there was for a 1975 Lincoln 2-door Town Coupe bearing Manufacturer's Number 5Y81A835248. The witness also produced as an exhibit a certificate of title for a 1975 Lincoln Continental owned by "Bob Delancey, Inc.", a dealer, bearing Manufacturer's Number 5Y81A882270, which was the same confidential number found to be on the vehicle seized by the police from Mr. DiPerna. The witness also said that the certificate of title, obtained from the Bureau of Motor Vehicles on the DiPerna car indicated that "E. Marrone & Sons" of New Castle, was a titled owner and that title was transferred from them on September 16, 1976 to one "Frank Yesbech" of McKeesport, Pennsylvania, a person which the trooper said he had been unable to locate and could not find any record of such a person's existence. Subsequently, the title on this vehicle was transferred April 18, 1978 from Frank Yesbech to Margaret DiPerna, the wife of the victim in this

case, in whose name title to the vehicle had been taken in the transaction involving this appellant. This title was encumbered on the records to the appellant, Joseph Cecchini, in the amount of $3,500.00. No certificate of title has ever been issued to the person named "Frank Yesbech".

The appellant took the stand and denied he had ever sold this vehicle to Mr. DiPerna, claiming that the appellant had instead signed a judgment note in favor of the appellant, January 18, 1978, on the basis of which he had loaned DiPerna money to purchase an automobile and that the encumbrance was put on the title to protect his interests. The appellant further said that he had no knowledge of alteration of any numbers on any vehicles. He went on to say that he is in the business of being a beer distributor and that he sometimes lends money to people and that he had lent money to Mr. DiPerna on a prior occasion.

The appellant contends that the lower court erred in refusing to grant his motion in arrest of judgment claiming that the evidence produced by the Commonwealth was insufficient to sustain the charges. Moreover, he argues that it was error to admit into evidence Commonwealth's exhibits five (5) and six (6) pertaining to the title histories of the public number (5Y81A835248) and confidential number (5Y81A882270).

In reviewing the denial of a motion in arrest of judgment, this court examines the evidence in a light most favorable to the Commonwealth, extending to the Commonwealth the benefit of all reasonable inferences to be drawn therefrom. *Commonwealth v. Rothman*, 226 Pa.Super. 319, 310 A.2d 353 (1973). The offenses with which the appellant was charged and convicted are set forth as follows:

(a) A person who buys, receives, possesses, sells or disposes of a vehicle, engine or transmission, *knowing that an identification number has been removed or falsified,* is guilty of a misdemeanor of the third degree.[2] (Emphasis supplied)

2. 75 Pa.C.S.A. § 7103(a).

(b) A person who buys, receives, possesses, sells or disposes of a vehicle, engine or transmission, *with knowledge that an identification number has been removed or falsified* with intent to conceal or misrepresent the identity thereof, is guilty of a felony of the third degree.[3] (Emphasis supplied)

Having examined, in detail, the record of this case, we are of the opinion that the evidence presented by the Commonwealth does not justify a conviction on the indictments before us.

Our decision in *Commonwealth v. Unkrich,* 142 Pa.Super. 591, 16 A.2d 737 (1940), specified that it is necessary for the Commonwealth to prove that the appellant had knowledge of the removal or falsification of a vehicle's identification numbers. In *Unkrich,* the appellant was accused of possessing an automobile upon which a certain manufacturer's engine number had been omitted, obliterated and defaced.[4] The Commonwealth presented evidence indicating that the identification numbers were defaced, that the automobile was stolen and that the appellant had possessed it. This court held that while some of the circumstances attending the case were of a suspicious nature and were sufficient to support a charge of receiving stolen goods, such evidence was not enough to show that the appellant possessed the requisite guilty knowledge. "Otherwise any person who buys a car, ... may be arrested, tried and convicted because perchance a secret number hidden somewhere in the car, where the average person would not think of looking, has been obliterated without the owner's knowledge." *Id.,* 142 Pa.Superior at 595, 16 A.2d at 740.

We recognize that direct evidence of an accused's state of mind is often not available where intent or guilty

---

3. 75 Pa.C.S.A. § 7103(b).

4. Appellant Unkrich was charged under sections 301 and 306 of the Motor Vehicle Code of May 1, 1929, P.L. 905 Art. III, amended by the Act of June 29, 1937, P.L. 2329, § 1, 75 P.S. §§ 61, 66. This was repealed and replaced by the present law. See n. 1 *supra.*

knowledge must be shown in order to sustain a conviction. *Commonwealth v. Stevenson*, 242 Pa.Super. 31, 363 A.2d 1144 (1976). Moreover, it is well established that criminal intent or guilty knowledge may be inferred where the facts are such as to show that element of the crime. Our review of the record discloses that the identification numbers on the vehicle were falsified, that the appellant possessed and sold the vehicle, and that he urged the buyer, DiPerna, to dispose of it, thereby revealing his knowledge that the automobile was stolen. We do not question the relevancy of these facts to the determination of the appellant's guilt or innocence, nor do we dispute the suspect nature of the appellant's conduct in this case.[5] However, in our view, such evidence does not indicate beyond reasonable doubt that appellant had knowledge of the removal or falsification of the numbers in question. Absent this crucial element of the crime, his conviction cannot be sustained. While we may, of course, draw fair inferences from circumstantial evidence, even that evidence is lacking here. Knowledge that a vehicle is stolen (and there is evidence that appellant possessed such knowledge) is not the same thing as knowledge that serial numbers have been changed.

We are bound by the statute defining the elements of the crime with which appellant was charged and are therefore compelled to the decision we reach in this case.

Accordingly, the Judgment of the lower court is reversed and the appellant is discharged.[6]

**5.** The evidence produced by the Commonwealth is more probative of the crime of Dealing in Titles for Stolen Vehicles, 75 Pa.C.S.A. § 7111, with which the appellant was not charged.

**6.** Having determined the evidence insufficient to convict the appellant, it is unnecessary to consider the issue regarding the relevancy of Commonwealth's exhibits 5 and 6.